# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2283

_____

United States of America,     *
           *
      Appellee,         *
           *   Appeal from the United States
    v.                 *   District Court for the
           *   Northern District of Iowa.
Joseph Nelson Spencer, Jr.,     *
           *
      Appellant.        *

_____

Submitted: November 15, 2005
Filed: March 10, 2006

_____

Before ARNOLD, BEAM, and RILEY, Circuit Judges.

_____

RILEY, Circuit Judge.

Joseph Nelson Spencer Jr. (Spencer) appeals his convictions related to his home drug manufacturing operation. The district court[1] sentenced Spencer to an aggregate sentence of 181 months' imprisonment. On appeal, Spencer contends the district court erred in denying his motion to suppress, and the evidence was insufficient to support the convictions. For the reasons stated below, we affirm the district court on all points.

_____

[1]The Honorable Donald E. O'Brien, United States District Judge for the Northern District of Iowa.

## I. BACKGROUND

This case began on June 14, 2000, when a United Postal Service (UPS) truck driver reported to Crawford County Deputy Sheriff Mike Bremser (Deputy Bremser) the UPS driver had delivered four liters of methanol to a residence at 40324 220th Street in rural Monona County, Iowa. When the UPS driver delivered the methanol to the residence, he detected a strong unfamiliar foul odor, and he observed a hot plate, glass beakers, numerous glassware and tubing, and a yellowish liquid in a large beaker on the front porch of the residence. Deputy Bremser then contacted Monona County Deputy Sheriff Roger Krohn (Deputy Krohn) about a possible clandestine drug laboratory at the residence.

Deputy Krohn obtained from the UPS driver a copy of the packing list for the methanol delivery. Deputy Krohn also contacted the chemical supply company located in Burbank, California, which shipped the methanol, and received copies of a prepaid invoice and a credit card sales receipt indicating Joseph Spencer purchased a glass beaker and various chemicals, including one gallon of "Methyl Alcohol (99.5%) Anhydrous," and had the items delivered to 40324 220th Street.

Based on this information, Deputy Krohn completed a search warrant application. Under the "Property or Persons to be Searched" portion of the search warrant application, Deputy Krohn entered "See Attachment 'D.'" Attachment D contained a copy of the property card from the Monona County Assessor with a scale drawing of the residence at 40324 220th Street.

Deputy Krohn presented the search warrant application, attachments, packing slip, prepaid invoice, and credit card sales receipt to a state court magistrate judge, who then issued the search warrant.

On June 16, 2000, state law enforcement officers executed the search warrant. Officers located Spencer outside the residence and placed him into custody. Monona

County Deputy Sheriff Summer Erlandson provided Spencer with a copy of the first page of the search warrant, but Spencer did not receive a copy of the attachments.

During the search, officers seized numerous items, including over 2,000 marijuana plants, lights, large light bulbs, a water storage tank, pumps, pH testers, pipes for fertilizer and water, literature and notes for growing marijuana indoors, hoses, electrical wires, chemicals, fertilizers, handwritten calculations of fertilizers and chemicals, dried poppy plants, opium poppy plants, a recipe for a red phosphorus methamphetamine lab, a butter tub with red powder, a mason jar with liquid, a baking dish with residue, a plastic bottle with a red/brown substance, pseudoephedrine bottles, green liquid, a coffee grinder with brown residue, a jar of iodine, red phosphorus from match striker plates, a Marlin Model .22 caliber semi-automatic rifle, an Auto Nine Corp. .22 caliber semi-automatic pistol, and a blue bag containing a dismantled 9mm Stenmark 2 machine gun.

A third superseding indictment charged Spencer with eight counts. Count 1 charged Spencer with knowing and intentional manufacture of and attempt to manufacture 1,000 or more marijuana plants, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Count 2 charged Spencer with being an unlawful user of controlled substances who possessed a firearm, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2). Count 3 charged Spencer with knowing and intentional manufacture of and attempt to manufacture five grams or more of actual (pure) methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. Count 4 charged Spencer with knowing and intentional manufacture of and attempt to manufacture opium poppy plants, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. Count 5 charged Spencer with knowing and intentional manufacture of and attempt to manufacture hashish oil, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D), and 846. Count 6 charged Spencer with knowing and intentional manufacture of and attempt to manufacture psilocybin (mushrooms), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. Count 7 charged Spencer with knowing

-3-

possession of one or more firearms, including a machine gun, in furtherance of the drug trafficking crimes charged in Counts 1, 3, 4, 5, and 6, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Count 8 charged Spencer with knowing possession of a machine gun, in violation of 18 U.S.C. §§ 922(o) and 924(a)(2).

After indictment, Spencer filed a motion to suppress evidence found at his residence during the execution of the search warrant. Following two hearings on the motion to suppress, the magistrate judge filed a report and recommendation, recommending Spencer's motion to suppress be denied. Spencer filed timely objections to the magistrate judge's report and recommendation. After holding two hearings and conducting a de novo review of the record, the district court denied Spencer's motion to suppress.

During the nine-day trial, Spencer represented himself pro se with standby counsel. At trial, UPS driver Butch Lahr (Lahr) testified about observations he made when he delivered methanol to Spencer's residence. After opening the porch door, Lahr smelled a "pretty stinky and pretty bad" odor, "like if somebody was peeing on a hot heater." Inside the porch, Lahr observed something cooking on a double hot plate with glass or plastic lines going to a beaker and a liquid. Upon seeing this, Lahr turned around to return to his UPS truck. As Lahr was leaving, Spencer came out of the porch and "started hollering at [Lahr]." That night, Lahr contacted Deputy Bremser.

Iowa State Patrol Trooper Steve Barger (Trooper Barger) testified that on June 16, 2000, he surveilled Spencer's residence from a cornfield adjoining the property. When Trooper Barger saw Spencer exit the residence, Trooper Barger detained Spencer until turning him over to local law enforcement.

Special Agent Mike Mittan (Special Agent Mittan) of the Iowa Division of Narcotics Enforcement testified Spencer had the most sophisticated indoor

hydroponic marijuana growing operation Special Agent Mittan had ever seen. Special Agent Mittan also testified Spencer was involved in several stages of growing marijuana, from growing seedlings, to moving the growing plants from inside to outside, to then drying the plants into marijuana for use, distribution, or further refinement into hashish oil.

Special Agent Mittan testified that, inside the residence, Spencer's operation consisted of lights, pipes for fertilizer and water, marijuana plants, literature and notes for growing marijuana indoors, hoses, chemicals, fertilizers, large light bulbs, a water storage tank, pumps, and pH testers. Officers also found handwritten notes calculating amounts of fertilizers and chemicals, which notes matched the actual grow operation in Spencer's residence. In an upstairs bedroom, Special Agent Mittan observed bundles of marijuana plants with their roots cut drying upside down, as well as several bags of dried marijuana.

Special Agent Mittan testified officers seized over 2,000 marijuana plants from Spencer's property. Approximately 160 of those plants were seized from Spencer's residence and the garden. The remainder of the plants were growing on either side of the sidewalk leading to the residence's front door. According to Special Agent Mittan, although the marijuana plants in Spencer's front yard were not wild marijuana plants, they were not grown with the same care as the plants in the garden or inside the residence. Special Agent Mittan testified marijuana growers often will be lazy and toss seeds outside.

Special Agents Kerry Northway and Todd Jones (Special Agent Jones) of the Iowa Division of Narcotics Enforcement testified they counted the number of marijuana plants seized from Spencer's property on June 16, 2000, and there were 2,524 plants with root systems.

Special Agent Jones also testified about searching and seizing items from Spencer's living room area on June 16, 2000. Special Agent Jones testified he observed a scanner with headphones in Spencer's residence, and scanners often are used "to keep tabs on law enforcement, knowing what we're doing." Special Agent Jones further testified Spencer had a surveillance system, including a monitor in the living room and a camera by the back door. According to Special Agent Jones, this type of surveillance system provides "an upper hand on law enforcement."

Iowa Division of Criminal Investigations Criminalists Kelli Bodwell (Bodwell) and James Bleskacek (Bleskacek) testified regarding items seized during the search of Spencer's residence. After officers secured Spencer's residence, Bodwell and Bleskacek collected fourteen samples of items they believed pertained to controlled substances, including a butter tub containing a red powder, a mason jar with a dark viscous liquid, a sample of a clear liquid from a gas can, a baking dish with residue, a plastic bottle containing a red/brown substance, various pseudoephedrine bottles, dried poppy plants, green liquid from a wine bottle, and a coffee grinder with brown residue. Bodwell and Bleskacek then took the items back to their laboratory for further analysis.

Iowa Division of Criminal Investigations Laboratory Criminalist Nila Bremer (Bremer) testified about her review of the items seized from the residence, agent reports, and photographs taken at the scene. Bremer prepared three laboratory reports concerning the analysis results of the seized items. Bremer found red phosphorous, iodine, spore prints, opium poppy plants, a yellow brown liquid containing marijuana, pseudoephedrine, a coffee grinder containing red phosphorus, a flask containing a tube used as a reaction vessel, matchbooks with the striker plates removed, coffee filters, and marijuana plants. The plant samples sent to the laboratory tested positive for marijuana. Bremer determined the amount of precursor pseudoephedrine seized could have produced a theoretical yield of 79.1 grams and a practical yield of forty-two to sixty-four grams of actual (pure) methamphetamine.

Special Agent Jones testified about the location of the firearms in Spencer's residence. Special Agent Jones found the Auto Nine Corp. .22 caliber semi-automatic pistol, loaded with one round in the chamber, in the middle drawer of a computer desk. Special Agent Jones found the Marlin Model .22 caliber semi-automatic rifle leaning against the living room wall. In Special Agent Jones's opinion, Spencer possessed the firearms to protect his drug manufacturing operation.

Special Agent Darren Hampton (Special Agent Hampton) of the Bureau of Alcohol, Tobacco, and Firearms testified about his investigation of the firearms seized from Spencer's residence on June 16, 2000. Special Agent Hampton testified he test-fired the Auto Nine Corp. .22 caliber semi-automatic pistol and determined the pistol functioned the way the manufacturer had designed it to function. Special Agent Hampton also test-fired the Marlin Model .22 caliber semi-automatic rifle and determined the rifle fired as the manufacturer had intended.

Victor Murillo (Murillo), a gun expert with the Iowa Division of Criminal Investigations Laboratory, testified regarding the 9mm Stenmark 2 machine gun. Murillo testified that when he received the machine gun, it had been "field stripped" into approximately ten to fifteen different parts, which were loose in a blue bag. Murillo noted the ejector had been taped to one of the parts. Murillo explained that after a machine gun fires a cartridge, the ejector "kicks the empty casing out of the ejection port," clearing the way for the next live round of ammunition. Murillo testified he "reassembled all of the parts to this firearm to make a fully functional weapon," and the machine gun could be reassembled "in about five or ten minutes." When Murillo reassembled the machine gun, he welded the ejector in place. Murillo testified the machine gun would still fire without the ejector, but the machine gun would jam, because the ejector could not eject the empty casing.

Spencer testified in his own defense. He testified he had not used methamphetamine since 1970. Spencer also denied making methamphetamine,

attempting to manufacture psilocybin (mushrooms), or manufacturing hashish oil. Spencer admitted he tried to make mushrooms for food in 1998, "but it didn't work out." Spencer further testified he "inadvertently" grew opium poppy plants. He explained he purchased a packet of poppy seeds at the grocery store, but "nothing on that said anything about these are opium poppy seeds." Spencer also testified he had the Marlin Model .22 caliber semi-automatic rifle to "forage[] for food."

As for his hydroponic marijuana growing operation, Spencer testified he "did" marijuana as part of his Buddhist religion, and he grew marijuana plants so he could eat the seeds. Spencer started his hydroponic marijuana growing operation "to see if I could do it. Also, . . . I could make some money off of this, you know, just from selling the plants for this." Spencer testified he threw the seeds in the garden, and "[t]hey came up." As for the marijuana plants growing outside his front door, Spencer denied throwing seeds out the front door. Based on Spencer's admitted extensive experience with growing marijuana, he opined the root systems showed the marijuana plants growing outside his front door "were just wild plants."

At the close of the government's case-in-chief, the district court dismissed Count 2 (being an unlawful user of controlled substances who possessed a firearm) and the machine gun charge in Count 7 (knowing possession of a machine gun in furtherance of the drug trafficking crimes charged in Counts 1, 3, 4, 5, and 6).[2]

The jury found Spencer guilty of Count 1 (manufacturing 1,000 or more marijuana plants), Count 3 (attempting to manufacture five grams or more of actual (pure) methamphetamine), Count 4 (manufacturing opium poppy plants), Count 5 (manufacturing hashish oil), Count 7 (possessing a firearm in furtherance of a drug trafficking crime, specifically the Marlin Model .22 caliber rifle and Auto Nine Corp.

---

[2]The government does not appeal the district court's dismissal of Count 2 or the machine gun charge in Count 7.

.22 caliber pistol), and Count 8 (possessing a machine gun). The jury found Spencer not guilty of Count 6 (manufacturing psilocybin (mushrooms)).

After the jury verdict, Spencer filed a motion for new trial, asserting the verdict was against the weight of the evidence. The district court denied Spencer's motion for new trial as to Counts 1, 3, 4, 7, and 8, but granted his motion as to Count 5 (manufacturing hashish oil).

The district court sentenced Spencer to a total of 181 months' imprisonment: 121 months' imprisonment on Counts 1, 3, and 4, to run concurrently with 120 months' imprisonment on Count 8; and 60 months' imprisonment on Count 7, to run consecutively.

Spencer appeals his convictions, arguing the district court erred in denying his motion to suppress. Spencer also appeals on the ground insufficient evidence supports his convictions for (1) manufacturing 1,000 or more marijuana plants, (2) possessing a firearm in furtherance of a drug trafficking crime, (3) possessing a machine gun, and (4) manufacturing methamphetamine.

## II.   DISCUSSION
### A.   Motion to Suppress

Spencer contends the district court erroneously denied his motion to suppress, because Spencer did not receive a copy of the attachment describing the property to be searched when law enforcement officers executed the search warrant. When reviewing a district court's denial of a motion to suppress, we examine for clear error the district court's factual findings, and we review de novo the ultimate question whether the Fourth Amendment has been violated. United States v. Rodriguez-Hernandez, 353 F.3d 632, 635 (8th Cir. 2003). "We must affirm an order denying a motion to suppress unless the decision is unsupported by substantial evidence, is

based on an erroneous view of the applicable law, or in light of the entire record, we are left with a firm and definite conviction that a mistake has been made." Id.

Spencer argues the failure to provide him with a copy of Attachment D at the outset of the search violated Federal Rule of Criminal Procedure 41.[3] Spencer's argument fails. Rule 41 applies exclusively to federal searches. United States v. Schroeder, 129 F.3d 439, 443 (8th Cir. 1997) (citing United States v. Moore, 956 F.2d 843, 847 (8th Cir. 1992)). Here, the state court issued the search warrant for Spencer's property, and state law enforcement officers executed the search warrant. Spencer produced no evidence federal law enforcement personnel executed the search warrant, initiated or participated in the search, or had any intention of using the state investigation to charge Spencer in federal court. Consequently, Rule 41 is inapplicable. See id.

Even if the search were federal in character, noncompliance with Rule 41 "does not automatically require exclusion of evidence in a federal prosecution." United States v. Schoenheit, 856 F.2d 74, 76 (8th Cir. 1988) (citing United States v. Brown, 584 F.2d 252, 258 (8th Cir. 1978)). Instead, exclusion is required only if a defendant is prejudiced or if reckless disregard of proper procedure is evident. United States v. Bieri, 21 F.3d 811, 816 (8th Cir. 1994). Spencer did not suffer any prejudice from not receiving Attachment D, and Spencer did not make a showing the officers acted with reckless disregard. We affirm the district court on the suppression issue.

B.    Sufficiency of the Evidence

Spencer next argues the government presented insufficient evidence to support his convictions for (1) manufacturing 1,000 or more marijuana plants, (2) possessing

---

[3]Rule 41(f)(3) provides, "[t]he officer executing the warrant must: (A) give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken; or (B) leave a copy of the warrant and receipt at the place where the officer took the property."

a firearm in furtherance of drug trafficking, (3) possessing a machine gun, and (4) manufacturing methamphetamine. Spencer "confronts a high hurdle with this argument, as we must employ a very strict standard of review on this issue." United States v. Cook, 356 F.3d 913, 917 (8th Cir. 2004). We review "the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." Id. (citation omitted). We will reverse only if no reasonable jury could have found Spencer guilty. See id.

### 1.     Number of Marijuana Plants

Officers seized 2,524 marijuana plants with root systems from Spencer's property, approximately 160 of which were seized from Spencer's residence and garden. On appeal, Spencer concedes he "clearly manufactured marijuana," and he "freely admitted manufacture of more than 100 plants." Spencer argues, however, no reasonable jury could have concluded he manufactured more than 1,000 marijuana plants, because he did not "cultivate" the marijuana plants growing in his front yard.

Contrary to Spencer's contention, nothing in the definition of "manufacture" requires "cultivation." As the district court recognized, the term "manufacture" includes "the production, preparation, propagation, compounding, or processing of a drug or other substance, either directly or indirectly or by extraction from substances of natural origin, or independently by means of chemical synthesis or by a combination of extraction and chemical synthesis." 21 U.S.C. § 802(15).

Although the marijuana plants located in Spencer's front yard were not grown with the same care as the plants in the garden or inside the residence, the sheer number (over 2,000) of marijuana plants confined to Spencer's front yard supports the jury's finding the plants in the front yard were not wild marijuana plants, growing in Spencer's front yard by chance, but were "manufactured" by Spencer. See United States v. Bernitt, 392 F.3d 873, 880 (7th Cir. 2004) (holding evidence was sufficient

to show defendant manufactured marijuana plants when plants were found on defendant's land, a mowed path led from the garden behind defendant's house to the area in question, a footpath led from the mowed area to plants, plants numbered approximately 280, plants grew "together in a bunch," and some were over eight feet tall), cert. denied, 125 S. Ct. 1882 (2005). The evidence presented at trial, including revealing photographs, also supported Special Agent Mittan's opinion the marijuana plants growing in Spencer's front yard were not wild marijuana plants, and the jury was free to credit Special Agent Mittan's testimony over Spencer's testimony. Ample evidence supports the jury's finding Spencer manufactured more than 1,000 marijuana plants.

**2.      Possession of a Firearm in Furtherance of Drug Trafficking**

Spencer next argues insufficient evidence supports his conviction for possessing the Marlin Model .22 caliber semi-automatic rifle and the Auto Nine Corp. .22 caliber semi-automatic pistol in furtherance of a drug offense, in violation of 18 U.S.C. § 924(c). In considering Spencer's argument, we recognize "simultaneous possession of drugs and . . . firearm[s] is not alone sufficient to support a conviction under" section 924(c). United States v. Hamilton, 332 F.3d 1144, 1150 (8th Cir. 2003). "Evidence of a nexus between the defendant's possession of the firearm and the drug offense is required." Id.

Based on the evidence presented at trial, a reasonable jury could find Spencer possessed both the Marlin Model .22 caliber semi-automatic rifle and the Auto Nine Corp. .22 caliber semi-automatic pistol in furtherance of his drug operation. Special Agent Jones found the loaded Auto Nine Corp. .22 caliber pistol in the middle drawer of a computer desk, and the Marlin Model .22 caliber rifle leaning against the living room wall. The proximity of the firearms to drugs, the handy availability of the firearms, and the dispersal of the firearms throughout Spencer's residence support an inference Spencer possessed the firearms to protect his drug manufacturing operation. See United States v. Cuervo, 354 F.3d 969, 992 (8th Cir. 2004), vacated on other

grounds sub nom., <u>Norman v. United States</u>, 543 U.S. 1099 (2005), <u>Schoenauer v. United States</u>, 543 U.S. 1099 (2005). The evidence was more than sufficient to support the jury's finding Spencer possessed firearms in furtherance of a drug trafficking offense.

### 3.     Possession of a Machine Gun

Spencer contends his conviction on Count 8 for knowingly possessing a machine gun is unsupported by the evidence, because the government failed to present any evidence Spencer knew the ten to fifteen loose parts would produce a fully automatic machine gun.

Under 18 U.S.C. § 922(o), it is "unlawful for any person to transfer or possess a machinegun." In order to prove Spencer unlawfully possessed a machine gun, the government must show (1) Spencer possessed a machine gun, and (2) he did so "knowingly." <u>See</u> <u>United States v. Farrell</u>, 69 F.3d 891, 893 (8th Cir. 1995). Spencer disputes only the second element of a section 922(o) violation, i.e., whether he "knowingly" possessed the machine gun. There can be no question Spencer possessed a machine gun. According to Murillo, the Iowa Division of Criminal Investigations Laboratory gun expert, the machine gun could be reassembled from its parts in as little as five minutes, and the machine gun was capable of automatic fire after welding the ejector into place. Accordingly, Spencer possessed "any combination of parts from which a machine gun can be assembled if such parts are in the possession or under the control of a person." 26 U.S.C. § 5845(b).

A reasonable jury could find Spencer knew the machine gun could be reassembled to fire in automatic mode. First, Special Agent Jones testified that when he found the dismantled 9mm Stenmark 2 machine gun inside a blue bag in Spencer's residence, a piece of tape held the critical ejector to the machine gun's barrel, indicating to Special Agent Jones that Spencer did not want to misplace the ejector. Second, Special Agent Jones testified the blue bag contained two magazines loaded

with 9mm ammunition, there were five boxes of 9mm ammunition in the living room near the area where the blue bag was located, and the 9mm ammunition was "consistent" with the 9mm Stenmark 2 machine gun.  Finally, Special Agent Jones testified he seized from Spencer's residence instructions on how to make an AK-47 fully automatic.  Considering the evidence in the light most favorable to the verdict, this evidence was sufficient to prove Spencer knowingly possessed a machine gun.

### 4.     Attempted Manufacture of Methamphetamine

Finally, Spencer argues the evidence did not support the jury's verdict finding him guilty of attempting to manufacture methamphetamine, in violation of 21 U.S.C. § 846, as charged in Count 3.

"In order to prove an attempt to manufacture methamphetamine, the government was required to demonstrate that [Spencer] intentionally engaged in conduct constituting a substantial step toward the production of methamphetamine." United States v. Beltz, 385 F.3d 1158, 1163 (8th Cir. 2004).  A substantial step is

> something more than mere preparation, yet may be less than the last act necessary before the actual commission of the substantive crime. . . .  In order for behavior to be punishable as an attempt, it need not be incompatible with innocence, yet it must be necessary to the consummation of the crime and be of such a nature that a reasonable observer, viewing it in context could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the statute.

United States v. Mazzella, 768 F.2d 235, 240 (8th Cir. 1985) (citation omitted) (alteration in original).  Whether a defendant's conduct constitutes a substantial step depends on the particular factual circumstances.  Id.

Spencer argues his conduct never amounted to a substantial step, because no methamphetamine was found at his residence, he could not have manufactured

methamphetamine with the supplies on hand at the time of the seizure, some of the pseudoephedrine pills were beyond the expiration date, and he had not used methamphetamine since 1970. We are not persuaded. According to Bremer, a criminalist with the Iowa Division of Criminal Investigations Laboratory, "there was a combination of items at the scene that is associated with the manufacture of methamphetamine using the iodine red phosphorus method." Officers seized red phosphorus, an iodine container, pseudoephedrine, flasks, tubes, striker tabs, coffee filters, acid, a recipe and a diagram for manufacturing methamphetamine using the red phosphorus method, and hot plates, which are all precursor items used for manufacturing methamphetamine. Additionally, the UPS driver testified he delivered methanol to Spencer's residence, which is a hazardous material used as a solvent for manufacturing methamphetamine. Although Spencer may not have possessed a fully working methamphetamine lab, Spencer had ordered, received, and possessed chemicals and equipment necessary to manufacture methamphetamine. Accordingly, the evidence was sufficient for the jury to find Spencer attempted to manufacture methamphetamine. See United States v. Smith, 264 F.3d 1012, 1016-17 (10th Cir. 2001) (defendant "need not possess a full 'working lab' to be convicted of attempting to manufacture methamphetamine," nor actually possess "all the needed precursor chemicals").

## III.    CONCLUSION

For the foregoing reasons, we affirm Spencer's convictions.

_____