# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 06-2802

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern District |
| | * | of Arkansas. |
| Pierre Bell, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: January 8, 2007
Filed: February 21, 2007

_____

Before WOLLMAN, BEAM, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Pierre Bell was charged with possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1); possession of a firearm after being convicted of a felony in violation of 18 U.S.C. § 922(g)(1); and possession of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c). Bell moved to suppress statements he made to law enforcement officers, alleging his statements were involuntary. The district court denied Bell's motion, and the case proceeded to trial. A jury found Bell guilty of all three offenses.

In determining the appropriate advisory Guidelines sentencing range for Bell, the district court declined to group Bell's felon in possession and drug trafficking offenses, resulting in a one-level increase in his offense level. Bell was sentenced to 144 months of imprisonment for the drug offense and 120 months of imprisonment for the felon in possession count, with these terms to be served concurrently. The court sentenced Bell to a consecutive term of 60 months on the other firearm offense, as required by § 924(c).

Bell raises three issues on appeal. First, Bell appeals the district court's denial of his motion to suppress. Second, Bell asserts there was insufficient evidence to support the jury's verdicts of guilty. Third, Bell challenges the district court's failure to group two of his three offenses in determining his advisory Guidelines range. For the reasons stated below, we affirm the district court's denial of Bell's motion to suppress and affirm the convictions. We remand, however, for resentencing in accordance with this opinion.

I.    Background

On November 4, 2004, members of the Pine Bluff Police Department and the Tri-County Drug Task Force executed a search warrant at 309 East 21st Street in Pine Bluff, Arkansas. Bell was present, as were the residence's occupants: Reecie Humphrey and her children. When officers entered the home, they found Bell and Humphrey in bed. Officers located a revolver between the mattresses on Bell's side of the bed. A pair of pants lay on the bedroom floor. In the pants pocket officers found a wallet containing Bell's identification, approximately seven grams of crack cocaine, a key ring with a key to the house, and over $300 in currency. In the same room, officers found a small amount of marijuana and a pill bottle containing powder cocaine. Officers arrested Bell and Humphrey; both Bell and Humphrey made

statements to law enforcement officers. The instant federal charges against Bell followed.

Bell moved to suppress his statement, alleging it was involuntary. At a suppression hearing on January 12, 2006, the government and Bell presented contrasting accounts of the execution of the search warrant. The government presented testimony from officers involved in the search. The officers testified that as they entered the bedroom occupied by Bell and Humphrey, they saw Bell slide to the floor and reach towards the bed as though he was trying to retrieve something. The revolver was discovered in the area where Bell had reached.

Bell and Humphrey were naked when the officers entered the bedroom; they were allowed to don clothing. Officers arrested both Bell and Humphrey and seated them in the living room. Eventually, Officer Oscar Bullard removed Humphrey to a pantry-type room, where Humphrey provided a written statement. In her statement, Humphrey said the drugs and the gun found during the search were Bell's. She stated Bell brought those items to her house early that morning.

After Humprey gave her statement, Officer William Roulhac interviewed Bell in the kitchen. Officer Roulhac testified he provided Bell with his Miranda rights and Bell agreed to speak with him. Bell admitted the seized crack cocaine belonged to him. He also admitted the gun was his, providing a description of the firearm consistent with its appearance. Bell began to write a statement, using his own words. Bell wrote "the work that was in the girls house is mine." When Officer Roulhac asked about the meaning of "work," Bell explained work is the equivalent of crack, selling crack. Officer Roulhac felt future readers of the statement might not understand the vernacular Bell used, so he stopped Bell from completing his statement and began writing one for him. Officer Roulhac testified Bell agreed to allow Officer Roulhac to write for him. Bell reviewed and signed the completed statement. Among

other things, the statement acknowledges the gun and the crack found in the house belong to Bell.

Humphrey testified at the suppression hearing that her written statement was false. She alleged a police officer told her to say all of the items were Bell's and threatened the removal of her children if she failed to cooperate. She testified officers threatened and assaulted Bell. She stated the seized revolver was hers and she lied about the ownership of the gun because she was afraid she would lose her housing-assistance payments if she told the truth about the gun.

Bell also testified at the suppression hearing. He testified officers held a machine gun to his head after they found him naked in bed. He claimed officers assaulted him and threatened him with a taser gun. He stated he asked to talk to his lawyer, but his request was ignored. He testified he scribbled his name on the statement written by Officer Roulhac only after these alleged transgressions. He denied the statement was true.

The district court credited the officers' testimony "in all material particulars." The court found Bell was provided with a written Miranda warning. It concluded Officer Roulhac read the written statement he drafted to Bell, Bell did not object to the statement, and Bell signed the statement. "Based on the entire record," the court concluded Bell's statement was voluntarily made after an intelligent and knowing waiver of his Miranda rights. The court did not credit the testimony of Bell or Humphrey.

Bell proceeded to trial. At trial, in addition to the evidence presented at the suppression hearing, the government presented expert testimony regarding the drugs seized and the relationship between drugs and guns. Arkansas State Police Sergeant Don Sanders testified that the amount of crack cocaine found in Bell's pants pocket was consistent with sale or distribution, not personal use. He further testified drug

-4-

dealers commonly possess firearms to protect themselves, their illegal goods, and their illegal proceeds.

Humphrey testified for the defense. As at the suppression hearing, Humphrey testified her prior statement, which was introduced into evidence during the government's case in chief, was false. Her testimony conflicted with that presented by the government in many respects. For example, she testified Bell did not slide to the floor as the officers entered the room. She claimed ownership of the gun and denied Bell knew it was in the home. The jury found Bell guilty of all counts.

At sentencing, the parties did not contest the base offense levels applicable to Bell's counts of conviction: an offense level 26 for Bell's conviction for possession with intent to distribute and an offense level 20 for his felon in possession conviction.[1] No offense characteristic enhancements were applied to either count.

Over Bell's objections, the court declined to group the felon in possession and possession with intent to distribute counts into a single group.[2] Instead, the court applied a multiple count adjustment. See U.S.S.G. § 3D1.4. The court added a one-level increase to the highest offense level, 26, resulting in a total offense level of 27. Bell qualified as a criminal history category VI, resulting in an advisory Guidelines range of 130 to 162 months. Had the counts been grouped, the range would have been 120 to 150 months.

_____

[1] The Guidelines sentence for a § 924(c) conviction is the statutory mandatory minimum of 60 months' imprisonment. See U.S.S.G. § 2K2.4(b). Thus, there is no offense level for that count.

[2] The Guidelines grouping rules do not apply to convictions under 18 U.S.C. § 924(c). U.S.S.G. § 3D1.1(b)(1).

-5-

The district court sentenced Bell to 144 months for the drug offense and 120 months for the felon in possession conviction, to be served concurrently. The court imposed a consecutive term of 60 months' imprisonment for the remaining count, for a total of 204 months' imprisonment.

II.     Discussion

A.     Motion to Suppress

"We review the district court's factual determinations in support of its denial of a motion to suppress for clear error and its legal conclusions de novo." United States v. Harper, 466 F.3d 634, 643 (8th Cir. 2006). We "will affirm the district court's denial of a motion to suppress evidence unless it is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made." United States v. Annis, 446 F.3d 852, 855 (8th Cir. 2006) (internal quotation omitted).

Bell does not contest he was provided with his Miranda rights. He contends his statements were involuntarily made – the result of threats and coercion – and therefore should have been suppressed, despite the Miranda warnings. A defendant's statements after being advised of his Miranda rights may be used against him if he knowingly and voluntarily waived his rights. See id. (citing, inter alia, Missouri v. Seibert, 542 U.S. 600, 608 n.1 (2004)). "A waiver is 'knowing and intelligent' where it is made with full awareness of both the nature of the right being abandoned and the consequences of abandoning the right, and a waiver is 'voluntary' where the court can determine that the waiver was a product of the suspect's free and deliberate choice, and not the product of intimidation, coercion, or deception." Thai v. Mapes, 412 F.3d 970, 977 (8th Cir. 2005). The totality of the circumstances inform whether a "defendant's will was overborne," making his statement involuntary. Annis, 446 F.3d at 855.

The district court's finding that Bell's written statement was voluntarily made was based upon the court's credibility determination. Because the government and the defense witnesses presented conflicting accounts of the conditions under which Bell provided his statements, credibility was the determining factor. "[C]redibility is a determination for the trier-of-fact, and its assessment is virtually unassailable on appeal." United States v. Rodriguez, 414 F.3d 837, 845 (8th Cir. 2005). After presiding over the suppression hearing, observing the witnesses, and considering the evidence, the district court credited the testimony of the law enforcement officers, who denied abusing, assaulting, or threatening Bell, and concluded the contrary testimony provided by Bell and Humphrey was not credible. This determination is properly the province of the district court. See United States v. Mendoza-Gonzalez, 363 F.3d 788, 794 (8th Cir. 2004) ("The district court is in the best position to judge the credibility of witnesses who testify before it . . . ."). We find the district court did not clearly err in finding Bell's statement to be voluntary. Thus, we affirm the district court's denial of Bell's motion to suppress.

B.    Sufficiency of the Evidence

Bell challenges the sufficiency of the evidence as to each count of conviction. "Our standard of review concerning whether the evidence is sufficient to support a conviction is strict." United States v. Savatdy, 452 F.3d 974, 976 (8th Cir. 2006). "We review the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." United States v. Spencer, 439 F.3d 905, 913 (8th Cir. 2006) (internal quotation omitted). We will overturn Bell's convictions only if no reasonable jury could have found him guilty beyond a reasonable doubt. See United States v. Stevens, 439 F.3d 983, 987 (8th Cir. 2006). Applying this standard, we conclude there was sufficient evidence to support Bell's convictions.

As to his conviction for possession with intent to distribute crack cocaine, the government presented evidence that approximately seven grams of crack cocaine was located in a pants pocket that also contained a wallet with Bell's identification. The pants were located in the room where Bell was found naked. The government presented a written statement in which Bell admitted the crack was his. Officers experienced with drug trafficking testified seven grams is greater than the amount of crack one would have for personal use. Also, officers testified that no indicia of personal use of crack cocaine – such as pipes – were found during the search. In addition, the jury could consider Bell's explanation of his use of the term "work," that it meant selling crack cocaine, in finding Bell possessed the crack cocaine and had the requisite intent to distribute it. This evidence provided sufficient grounds for a reasonable jury to find Bell guilty of possession with intent to distribute crack cocaine.

Regarding his conviction for being a felon in possession of a firearm, Bell challenges whether there was sufficient evidence to demonstrate he possessed the firearm in question. Evidence consistent with his possession included the officers' observation of his movement apparently toward the gun upon their entry into the room, the location of the gun under Bell's side of the bed, Humphrey's initial statement that the gun belonged to Bell, and Bell's statement claiming ownership of the gun. Considering this evidence, a reasonable jury could conclude that Bell, who is not contesting he is a felon, possessed the revolver charged in the indictment.

The evidence was sufficient to support Bell's conviction for possessing a firearm in furtherance of a drug trafficking crime, as well. "To secure a conviction under § 924(c)(1)(A), the government must present evidence from which a reasonable juror could find a 'nexus' between the defendant's possession of the charged firearm and the drug crime, such that this possession had the effect of furthering, advancing or helping forward the drug crime." United States v. Sanchez-Garcia, 461 F.3d 939, 946 (8th Cir. 2006) (internal quotation omitted). Simply possessing drugs and a firearm at the same time is insufficient to support a conviction under § 924(c). See

Spencer, 439 F.3d at 914. However, evidence sufficient for convictions for both possessing with intent to distribute cocaine base and possessing a firearm as a prohibited person can be sufficient for a § 924(c) conviction, as well. See United States v. Johnson, No. 05-3660, 2007 WL 313590, at *5 (8th Cir. Feb. 5, 2007) ("In light of our determination there was sufficient evidence [the defendant] knowingly possessed the firearm, and given [the defendant's] conviction for possession with intent to distribute cocaine base, we conclude sufficient evidence supports the jury's verdict on [the § 924(c)] count as well.").

Based on the evidence presented at trial, a reasonable jury could find Bell possessed the revolver in furtherance of his drug trafficking crime. Officers observed Bell apparently reaching for the revolver when they entered the bedroom. The gun was proximately located to the stash of crack cocaine in Bell's pants pocket. In addition, Sergeant Sanders testified that drug dealers often possess firearms to protect themselves and their drugs. These facts, while not overwhelming, support an inference that Bell possessed the revolver in furtherance of his possession with intent to distribute the crack cocaine. See, e.g., Stevens, 439 F.3d at 989-90 (finding evidence sufficient to support defendant's § 924(c) conviction where, among other things, the weapon was within close proximity to the dealer and the drugs and a government witness testified to the common use of firearms to protect drugs, drug dealers, and drug proceeds). Taking, as we must, these facts in the light most favorable to the verdict, we conclude a reasonable jury could have found Bell guilty of possessing a firearm in furtherance of a drug trafficking offense beyond a reasonable doubt.

A defendant challenging the sufficiency of the evidence "confronts a high hurdle." Spencer, 439 F.3d at 913 (internal quotation omitted). Bell has failed to surmount that hurdle. We find there was sufficient evidence supporting each count of conviction.

C.    Sentencing

"We review de novo a district court's determination on the grouping of offenses." United States v. Rugh, 968 F.2d 750, 755 (8th Cir. 1992).  The Guidelines provide for the grouping of certain offenses to "prevent multiple punishment for substantially identical offense conduct." U.S.S.G. Ch. 3, pt. D, introductory cmt.  As such, "[c]onvictions on multiple counts do not result in a sentence enhancement unless they represent additional conduct that is not otherwise accounted for by the guidelines." Id.

Section 3D1.2 outlines when multiple counts shall be treated as a single group.  The overarching principle embodied in § 3D1.2 is that "counts involving substantially the same harm shall be grouped together into a single Group." U.S.S.G. § 3D1.2.  One instance where multiple counts are considered to involve the same harm is when "one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts." U.S.S.G. § 3D1.2(c).  Each of the relevant offenses includes conduct that is treated as specific offense characteristics in the other offense.  Section 2D1.1, the guideline applicable to the crack offense, calls for a two-level increase in offense level "[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1).  Here, Bell possessed a revolver and it was not "clearly improbable that the [revolver] was connected with the [crack cocaine] offense."  U.S.S.G. § 2D1.1 cmt. n.3.  The guideline utilized for the felon in possession conviction, § 2K2.1, provides for four-level increase "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(5).  As demonstrated by Bell's conviction for possessing the revolver in furtherance of his crack cocaine offense, this enhancement is applicable to his offense conduct.  Thus, both counts "embod[y] conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to" the other count and are properly grouped.  U.S.S.G. § 3D1.2(c).

Because "[f]irearms are the tools of the drug trade providing protection and intimidation," United States v. Linson, 276 F.3d 1017, 1019 (8th Cir. 2002), firearm and drug trafficking offenses are frequently interrelated and result in reciprocal offense characteristic enhancements. These counts therefore are grouped together pursuant to § 3D1.2, often without note. See, e.g., Annis, 446 F.3d at 857 n.3 (implying grouping of defendant's firearm and drug offenses); United States v. Pierce, 388 F.3d 1136, 1137 (8th Cir. 2004) (per curiam) (noting the parties agreed to the grouping of defendant's felon in possession and drug trafficking convictions); United States v. Hellbusch, 234 F.3d 1050, 1052 (8th Cir. 2000) (commenting that dismissed counts charging methamphetamine distribution and possessing a firearm as a felon would have been grouped pursuant to § 3D1.2). Other circuits have specifically recognized the propriety of grouping offenses treated under §§ 2D1.1 and 2K2.1. See, e.g., United States v. King, No. 06-11696, 2006 WL 3006699, at *2 (11th Cir. Oct. 23, 2006) (unpublished) (upholding the grouping of drug trafficking offenses with a felon in possession conviction because the gun count "embodies conduct that is treated as a specific offense characteristic" of the drug counts); United States v. Versey, 16 Fed. Appx. 500, 502 (7th Cir. 2001) (unpublished) ("Because the felon-in-possession count embodied conduct (possession of a firearm) treated as a specific offense characteristic in the guideline applicable to the distribution count, the court grouped the two counts and adopted the higher offense level . . . .") (internal citations omitted).

Grouping of the felon in possession count and the drug count is proper even though the applicable enhancements are not utilized. The Guidelines prohibit adding gun-related offense characteristic enhancements for an offense underlying a § 924(c) conviction (here the drug trafficking offense) because the § 924(c) conviction already carries statutorily required incremental punishment – a mandatory consecutive 60 month term of imprisonment. See 18 U.S.C. § 924(c); U.S.S.G. § 2K2.4 cmt. n.4 ("If a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for possession,

brandishing, use, or discharge of [a] . . . firearm when determining the sentence for the underlying offense."). Likewise, the offense characteristic enhancement based upon a related drug trafficking felony is unavailable for a felon in possession conviction when there is also a § 924(c) conviction. U.S.S.G.§ 2K2.4 cmt. n.4 (noting that a § 2K2.1(b)(5) enhancement is not applied because "of the relatedness of [the conduct justifying the enhancement] to the conduct that forms the basis for the conviction under . . . § 924(c)"). Nonetheless, each count includes conduct that is "treated as a specific offense characteristic in" the other offense, and therefore the counts should be grouped. U.S.S.G. § 3D1.2(c); see, e.g., King, 2006 WL 3006699 at *2 (approving of the grouping of a felon in possession count with drug trafficking offenses when there was also a § 924(c) conviction). That the conduct is addressed elsewhere in the Guidelines does not diminish the linkage between the offenses. The conduct is "otherwise accounted for by the guidelines" and therefore additional incremental punishment is unwarranted. U.S.S.G. Ch. 3, pt. D, introductory cmt.

Bell was convicted of three "closely intertwined" but separate offenses arising from the same conduct. U.S.S.G. Ch. 3, pt. D, introductory cmt. The firearm he was found guilty of possessing as a felon was the same firearm he was found guilty of possessing in furtherance of a drug trafficking crime; and he was convicted of the drug trafficking crime – possession with intent to distribute crack cocaine. While the three offenses have distinct elements, they do not "represent additional conduct that is not otherwise accounted for by the guidelines." Id. Thus, the felon in possession count and the crack cocaine count should have been grouped together for sentencing purposes, resulting in an offense level 26.

III.    Conclusion

For the reasons stated herein, we affirm the district court's denial of the motion to suppress and affirm Bell's conviction.  The case is remanded for resentencing consistent with this opinion.

_____