# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 17-3730

———————————————

United States of America,

*Plaintiff - Appellee,*

v.

Meamen Jean Nyah,

*Defendant - Appellant.*

——————————

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

——————————

Submitted: November 12, 2018
Filed: June 26, 2019

——————————

Before COLLOTON, SHEPHERD, and STRAS, Circuit Judges.

——————————

COLLOTON, Circuit Judge.

Meamen Nyah entered a conditional guilty plea to one count of possession of a firearm as an unlawful user of a controlled substance. The district court[1] denied

———————————

[1]The Honorable John A. Jarvey, Chief Judge, United States District Court for the Southern District of Iowa.

Nyah's motion to suppress evidence obtained from a search of his Facebook account. Nyah appeals, and we affirm.

I.

On July 7, 2016, Des Moines Police Detective Jeffrey Shannon submitted an affidavit requesting a search and seizure warrant for Facebook, Inc., to disclose the contents of accounts belonging to Nyah and three other people. He sought the warrant under 18 U.S.C. § 2703, which governs the required disclosure of customer communications or records by a provider of electronic communication service or remote computing service.

Shannon started by recounting information that was obtained during an investigation seven months earlier. He averred that on December 3, 2015, he had received a tip that members of a local gang would be filming a music video while in possession of firearms at an apartment in Des Moines. The affidavit said that police officers searched the apartment on December 3, discovered several firearms, and encountered Nyah among the people present for the filming of the video. The music video was then posted to Facebook and YouTube on approximately January 7, 2016. The affidavit stated that Nyah, along with three other people, was "clearly visible in the video," and was handling at least one of the firearms recovered during the December search.

The affidavit explained that each of the four people identified had "utilized his Facebook account to post the music video, display photographs carrying firearms, display photographs of what appear to be marijuana, and/or proclaim his gang affiliation." The affidavit also stated that Nyah had been arrested on December 7, 2015, for carrying weapons after a police officer found a loaded gun in the glove compartment of a car in which Nyah was the front-seat passenger. The officer detected the odor of marijuana emanating from the vehicle and saw Nyah reach into

the glove compartment and appear to dig inside frantically. The weapons charge against Nyah eventually was dropped after the driver admitted that the firearm belonged to him. Police also found marijuana in a backpack in the trunk of the car. Finally, the affidavit stated that between December 2015 and May 2016, Shannon and other law enforcement officers had observed Nyah in photographs posted to his Facebook profile "that include him posing with firearms and smoking what appears to be marijuana."

A magistrate judge issued a warrant on July 7, 2016, authorizing law enforcement officers to search for information associated with Nyah's Facebook account that was stored at Facebook's corporate premises, for the period from November 1, 2015, to July 7, 2016. The warrant commanded the officers to execute the warrant on or before July 21. On July 8, Shannon delivered the warrant to Facebook, and the company turned over the requested material on July 22. The Facebook records seized by the government included photographs and messages that were evidence of Nyah's drug use and possession of firearms. A grand jury then charged Nyah with one count of possession of a firearm as an unlawful user of a controlled substance, in violation of 18 U.S.C. § 922(g)(3).

Nyah moved to suppress the evidence obtained from the search of his Facebook account. He argued that there was insufficient probable cause to support issuance of the warrant, that the affiant made false statements in the supporting affidavit, and that the warrant was not executed within the proper time frame. The district court denied the motion, and Nyah entered a conditional guilty plea that preserved his right to appeal the denial of the motion.

When considering the denial of a motion to suppress, we review the district court's findings of fact for clear error and its legal conclusions *de novo*. *United States v. Stevenson*, 727 F.3d 826, 829 (8th Cir. 2013). We review for abuse of discretion a district court's refusal to grant a hearing under *Franks v. Delaware*, 438 U.S. 154

(1978), concerning alleged false statements in an affidavit. *United States v. Stropes*, 387 F.3d 766, 771 (8th Cir. 2004).

## II.

### A.

Nyah first contends that Shannon's affidavit did not establish probable cause to support the issuance of the search warrant. Probable cause exists when there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). We review the matter to determine whether the issuing magistrate judge had a substantial basis for concluding that probable cause existed. *Id.* at 238-39.

We conclude that the affidavit established probable cause that Nyah's Facebook account contained evidence of Nyah possessing firearms as an unlawful drug user. Shannon reported that he and other officers had observed photographs posted to Nyah's Facebook profile "that include him posing with firearms and smoking what appears to be marijuana." Nyah responds that the affidavit was devoid of evidence that the photographs show him posing with *real* firearms and smoking *real* marijuana. But there was an ample basis for the magistrate judge to infer a fair probability that Nyah possessed real guns and drugs. Shannon, a trained drug investigator with many years of experience investigating violent crime, reported that the items appeared authentic in the Facebook photographs. He also averred that Nyah possessed an apparently genuine firearm in the music video; that conclusion was corroborated by a seizure of real firearms from the site where the music video was filmed on the date of the filming. The affidavit also contained evidence that Nyah was found in a car emitting an odor of marijuana, with real marijuana in the trunk, during the traffic stop on December 7. There was thus a substantial basis to support the issuing judge's determination of probable cause.

-4-

B.

Nyah next argues that the warrant was invalid because it contained false statements that were necessary to establish probable cause. A defendant is entitled to a hearing on that question if he makes "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Franks*, 438 U.S. at 155-56. We conclude that Nyah did not make the requisite showing.

Nyah alleges that the affidavit contained several false statements. First, Nyah protests that he is not a gang member, but the affidavit said only that Nyah was "connected to" a gang; that statement was supported by the affidavit's uncontested description of Nyah creating a music video with at least one gang member. Second, Nyah argues that the affidavit falsely stated that he used his Facebook account to post the music video and to proclaim his gang affiliation. The relevant part of the affidavit, however, used the imprecise conjunction "and/or" when describing the evidence: "each of the individuals identified in this Affidavit have utilized his Facebook account to post the music video, display photographs carrying firearms, display photographs of what appear to be marijuana, and/or proclaim his gang affiliation." By employing the ambiguous "and/or" conjunction in that list, the affidavit fell short of claiming that Nyah posted the video or proclaimed gang affiliation; the affiant claimed only that Nyah did at least one of the actions in the list.

Nyah also complains that the affidavit falsely said that officers encountered him in the apartment during the search on December 3. But even if the statement was wrong, it was immaterial. Nyah does not dispute that the affidavit accurately identified him as a participant holding a firearm in the video produced at the apartment on December 3. So even if he was not present in the apartment at the moment of the search, the affidavit still set forth ample probable cause to search his

-5-

Facebook account. The district court did not abuse its discretion by denying the *Franks* claim without a hearing.

## C.

Nyah's final argument is that the evidence from Facebook should be excluded because law enforcement officers failed to execute the warrant within the fourteen-day limit set forth in the warrant. The warrant commanded the officers to execute the warrant on or before July 21, 2016, but Facebook did not produce material from Nyah's account until July 22. As a result, Nyah contends, there was a violation of Federal Rule of Criminal Procedure 41, which requires that a warrant command officers to "execute the warrant within a specified time no longer than 14 days." Fed. R. Crim. P. 41(e)(2)(A)(i) (2011). And he argues that the search was "warrantless," because no search warrant authorized a search at Facebook after July 21.

Whether there was a violation of Rule 41 turns on the meaning of the term "execute." The district court thought the warrant was executed when the officers delivered it to Facebook, because the warrant was dependent on cooperation by the recipient: "The police have no ability to enter the premises of a company like Facebook and manipulate its computers to its satisfaction." R. Doc. 128, at 9. Nyah counters that the warrant was not executed until the officers seized the evidence from Facebook.

Despite the practical concerns raised by the district court, the text of Rule 41 suggests that a warrant is not fully executed until officers have seized the property that they are authorized to take. The subsection entitled "Executing and Returning the Warrant" first addresses a "Warrant to Search for *and Seize* a Person or Property." Fed. R. Crim. P. 41(f)(1) (2011) (emphasis added). The subsidiary provision on "Inventory" states that "[a]n officer present *during the execution* of the warrant must prepare and verify an inventory *of any property seized*." *Id.* R. 41(f)(1)(B) (emphases

added).  Similarly, "[t]he officer *executing the warrant* must give a copy of the warrant and *a receipt for the property taken*" to the appropriate person.  *Id.* R. 41(f)(1)(C) (emphases added).  And "[t]he officer *executing the warrant* must promptly return it—*together with a copy of the inventory*—to the magistrate judge." *Id.* R. 41(f)(1)(D) (emphases added).  A special rule governing warrants seeking electronically stored information states that the time for "executing" such a warrant "*refers to the seizure* or on-site copying of the media or information."  *Id.* R. 41(e)(2)(B) (emphasis added).  These provisions suggest that the authorized seizure of property under the warrant constitutes part of the execution of the warrant.[2]

Although law enforcement officers may not be able to control when the recipient of a warrant like this one produces the items sought under the warrant, the government likely has a means to overcome any timing problem that arises from delay by the third party.  If the recipient does not produce property for seizure within the time prescribed in the warrant, then officers may simply obtain a fresh warrant with a renewed period of fourteen days within which to execute the warrant.

At least two courts, however, have ruled in cursory fashion that a warrant directed to a service provider is executed when an officer serves it on the provider. *See United States v. Farrad*, 895 F.3d 859, 890 & n.23 (6th Cir. 2018); *see also United States v. Allen*, No. 16-10141-01-EFM, 2018 WL 1726349, at *8 (D. Kan.

---

[2]The provision requiring that a warrant must command an officer to "execute" the warrant within a defined time period was adopted in 2002.  The 2002 amendment was part of a restyling project that was not designed to change any substance that is relevant here.  *See* Fed. R. Crim. P. 41 advisory committee's note to 2002 amendments.  The "receipt" provisions of the former and amended rules appear to equate "[t]he officer *taking property* under the warrant," *id.* R. 41(d) (2001) (emphasis added), with "[t]he officer *executing* the warrant," *id.* R. 41(f)(3) (2002), R. 41(f)(1)(C) (2011) (emphasis added).  This usage further suggests that "execution" of a warrant includes the taking of the property in question.

Apr. 10, 2018). The government also points to *United States v. Welch*, 811 F.3d 275, 280 (8th Cir. 2016), where this court said that a Network Investigative Technique warrant was executed on the date when law enforcement installed software on a private computer server. In *Welch*, however, the court did not appear to address whether "execution" of the warrant continued through a period after installation during which the software collected information for investigators, as neither party raised the question, and the opinion does not mention it. *See id.* at 279-80; Brief of Appellant at 7-8, 14, *Welch*, 811 F.3d 275 (No. 15-1993); Brief of Appellee at 14, 25, *Welch*, 811 F.3d 275 (No. 15-1993).

We need not resolve definitively whether the warrant for information from Nyah's Facebook account was executed within fourteen days after the warrant was issued, because any violation of Rule 41 in this case would not call for suppressing the evidence obtained from Facebook.[3] Except when there is a constitutional infirmity, noncompliance with Rule 41 justifies exclusion of evidence "only if a defendant is prejudiced or if reckless disregard of proper procedure is evident." *United States v. Spencer*, 439 F.3d 905, 913 (8th Cir. 2006). Neither criterion is satisfied here.

---

[3]The principal briefs in this case include only one paragraph each concerning when the warrant served on Facebook was "executed." This is thus an appropriate case in which to raise questions about the government's position without unnecessarily creating a conflict in the circuits on sparse briefing. As noted, the government can avoid the issue in future cases by seeking a fresh warrant; a future panel may benefit from more fulsome briefing and argument if the issue arises again; and rulemakers over time might elect to amend or clarify Rule 41 in light of judicial decisions. *See generally* Pierre N. Leval, *Judging Under the Constitution: Dicta About Dicta*, 81 N.Y.U. L. Rev. 1249, 1253 (2006) (noting that "dicta often serve extremely valuable purposes"). In our judgment, it is more constructive to prompt fuller consideration of the "execution" issue in the future than to withhold all discussion of the point until a litigant is actually prejudiced by alleged untimeliness.

Even if the warrant was "executed" one day late when an officer seized the material from Facebook on July 22, probable cause continued to exist. The warrant targeted pre-existing account information, so the affiant's probable cause did not become stale. The search would have occurred on July 22 even if a new warrant were required. *See United States v. Turner*, 781 F.3d 374, 387 (8th Cir. 2015). There also was no reckless disregard of proper procedure, as the officer delivered the warrant to Facebook the day after the warrant was issued. No clearly established law dictated that the officer must secure a new warrant to seize the property if it was produced after July 21. Thus, the executing officer was not reckless, and Nyah was not prejudiced, so any violation of Rule 41 does not justify exclusion of evidence here. *See United States v. Beckmann*, 786 F.3d 672, 680-81 (8th Cir. 2015).

Nyah contends that if there was a one-day violation of the time limit on execution of a warrant under Rule 41, then the search and seizure was "warrantless," and the Fourth Amendment requires suppression of the evidence. Not every violation of Rule 41, however, rises to the level of a constitutional violation. *United States v. Freeman*, 897 F.2d 346, 348-49 (8th Cir. 1990). The Fourth Amendment does not require that search and seizure warrants include expiration dates; the fourteen-day time limit at issue here is a creature of federal rule. *United States v. Burgess*, 576 F.3d 1078, 1097 (10th Cir. 2009). The officer in this case obtained a valid search warrant from a neutral magistrate based on probable cause and delivered it to Facebook in a timely manner. The seizure of evidence was authorized by a magistrate judge at least until the fourteenth day after the warrant was issued. Even if there was a minor violation of Rule 41 in seizing the evidence on the fifteenth day, the search and seizure was "reasonable" under traditional Fourth Amendment standards, and any violation of the rule does not rise to the level of a constitutional infirmity.

\* \* \*

The judgment of the district court is affirmed.

STRAS, Circuit Judge, concurring in part and concurring in the judgment.

The court says more than it needs to about an issue that it never decides: whether a warrant is "executed" when it is delivered to someone in possession of digital data or, instead, when the data is finally turned over to the authorities. Although the court claims not to "definitively" resolve this difficult question, it devotes over two pages to it and all but supplies us with the answer.[4] Because I agree that the officers were not reckless and that Nyah suffered no prejudice, *see United States v. Spencer*, 439 F.3d 905, 913 (8th Cir. 2006), my analysis would end there and it would leave a future panel with a chance to decide the question on a clean slate.

_____

[1]The court's observation in footnote 3 that there is inadequate briefing on the warrant-execution question highlights one of the reasons why we should not address it at all, much less suggest an answer to it. Another being, of course, that we can fully resolve this case without doing so.