In The

# United States Court of Appeals
For the Seventh Circuit

———————————

No. 09-2516

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SIDNEY O. SELLERS,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:08-cr-00023-RL-APR-1— **Rudy Lozano,** *Judge.*

———————————

ARGUED May 18, 2010 — DECIDED May 19, 2011[*]

———————————

———————————

[*] This opinion is being released initially in typescript form.

Before O'CONNOR[**], *Associate Justice*, and KANNE and ROVNER, *Circuit Judges*.

ROVNER, *Circuit Judge*.  As part of a sting operation, police officers and Drug Enforcement Administration officers staked out Sidney Sellers's car.  When they pulled the car over for traffic violations, they found a fully loaded handgun registered in Illinois.  Sellers, however, was in Indiana.  Upon arrest for possession of a handgun without the requisite license, an inventory search of Sellers's car revealed several bags containing crack cocaine.  Sellers was charged with and convicted by a jury of possession with intent to sell crack cocaine and possession of a firearm used in drug trafficking, and sentenced to 180 months incarceration.  In this court, Sellers argues that the district court deprived him of his Sixth Amendment right to choice of counsel by failing to grant a continuance, that the court erred in denying his motion to suppress evidence gathered pursuant to the search of his vehicle, and that the government lacked sufficient evidence at trial to prove him guilty beyond a reasonable doubt of the drug offense. Because we find that Sellers was indeed denied his Sixth Amendment right to counsel of his choosing, the judgment of the district court is vacated and the case remanded for a

---

[**] The Honorable Sandra Day O'Connor, Associate Justice of the United States Supreme Court (Ret.), sitting by designation pursuant to 28 U.S.C. § 294(a).

new trial.   We need not address Sellers's other issues presented for review.

## I.

Our holding obviates the need to detail the facts surrounding Sellers's criminal activity and arrest.  Instead, we focus on the particulars surrounding Sellers's choice and retention of counsel, and the district court's response.

Sellers initially retained attorney David Wiener to represent him against the drug and gun charges. Apparently, shortly after Sellers engaged Wiener, Wiener approached attorney Michael Oppenheimer and asked him to appear as secondary counsel.  R. 36, Tr. 5/9/08 at 10-11. Oppenheimer, by all indications, was a stranger to Sellers, having never been hired by him.   Nevertheless, Oppenheimer filed an appearance, Wiener did not.  Thus at his probable cause and detention hearing on February 22, 2008, Sellers appeared with Oppenheimer alone. Oppenheimer appeared with Sellers again on March 13, 2008, at his arraignment before Magistrate Judge Rodovich. At that hearing, the magistrate judge set a deadline of April 12, 2008, for pre-trial motions, April 25 for the pre-trial conference, and May 12 for trial.  The pre-trial conference was later re-set to May 2, 2008 due to Oppenheimer's automobile trouble on April 25.

At the pre-trial conference on May 2, Oppenheimer indicated that he would file imminently two motions — a motion to suppress evidence and a motion to continue. The magistrate judge set dates requiring pre-trial motions by May 6 and government responses by May 20. The latter date fell eight days past the original trial date, presumably anticipating that the district court would grant the continuance. The magistrate judge indicated, nevertheless, that these dates were contingent upon the district court's grant of a continuance.[1] On May 5, the district court judge issued an order setting a status conference for the following day.

Oppenheimer filed his motion to suppress evidence on May 6. The government immediately objected that the motion was late, having not been filed within the thirty days following the March 13 arraignment as originally ordered. The next day, Sellers filed his motion for a continuance,

---

[1] The parties have informed this court that they are unable to provide transcripts of the proceedings before Magistrate Judge Rodovich on May 2, 2008, as they were held in chambers and off the record. R. 36. We therefore have only the parties' representations of what Magistrate Judge Rodovich said at that hearing. After conferring with the magistrate judge, the district court judge stated on the record, and Sellers's counsel confirmed, that the magistrate judge unequivocally informed the defendant that the dates he was setting were contingent on the district court's grant of a continuance. *See* R. 36, Tr. 5/9/08 at 5-6, 26-27.

which asserted first, that counsel had filed the motion to suppress on May 6 in reliance on the magistrate judge's briefing schedule, and second, that Sellers required a continuance to allow him to proceed with his counsel of choice, David Wiener.  R. 26 at 2.

That same day, May 7, the district court judge denied both the motion for a continuance and the motion to suppress evidence.  In dismissing the motion to continue, the court explained that the case had been set for trial since March 13, 2008, and that Sellers had filed the motion for the continuance just three business days before the scheduled trial date.  The district court did note that the magistrate judge had extended the dates for filing, but stated that "Magistrate Rodovich gave the dates for the filing of the motion to suppress and the response contingent upon this Court granting a motion to continue."  R. 30 at 2.  The district court judge also claimed to be "baffled" by the information that David Wiener was lead counsel and counsel of choice for Sellers.  Wiener, the court noted, had yet to file an appearance in the case, and Oppenheimer's associate had failed to mention a proposed change in counsel when appearing at the status hearing.  "Additionally," the district court judge wrote, "it is typically this Court's rule that new counsel take the case as they find it."  R. 30 at 2.  Finally, the district court noted that Sellers's attorney had missed several filing deadlines and failed to show good cause to file a late motion.  In short, the district

court denied the motion for a continuance and confirmed the trial date of May 12, 2008.

Oppenheimer appeared again with Sellers on May 9 and orally renewed his motion for a continuance. Wiener, Oppenheimer explained, had been retained by Sellers to act as lead counsel in the case and had informed Oppenheimer that he would file his appearance shortly. Wiener, however, was scheduled to begin a murder trial in state court on May 12, the date Sellers's trial was set to start, and then a second murder trial on May 19. Consequently, because Oppenheimer had not intended to act as lead counsel, and had not prepared adequately for trial, and because Wiener was not available, Oppenheimer renewed his motion for a continuance. The court again denied the motion but delayed the trial one week as a courtesy to counsel, to allow the parties to brief the motion to suppress. The new trial date of May 19, 2008, was no better for Wiener, as he was scheduled to begin his second murder trial in state court that day.

On May 12, at a pre-trial hearing, Oppenheimer again appeared for Sellers, but informed the court that Wiener would enter his appearance that day and that Wiener was hopeful that he would be able to appear for trial on May 19.

Sellers appeared before the district court judge again on Friday, May 16, after he informed the court that he wished to fire Oppenheimer. Sellers addressed the court

and announced first, that he had not chosen Oppenheimer as his counsel, second, that he had retained Wiener, and third, that because Wiener had never appeared, he had been in contact with two additional attorneys, one of whom he hoped to hire. The district court informed Sellers that although he was free to fire Oppenheimer, the court was unlikely to grant a continuance to allow new counsel additional time to prepare for trial. Sellers reiterated that he wished to fire Oppenheimer but reluctantly agreed to continue with him until he could be assured that he had substitute counsel for trial.

On the scheduled date of trial, Monday, May 19, 2008, Sellers appeared with both Oppenheimer and his newly retained attorney, Santo Volpe. Each counsel and the defendant addressed the court announcing his situation: Sellers told the court, "I don't want Mr. Oppenheimer to represent me. We have too many differences on the case. We don't see eye to eye. We don't get along." R. 74, Tr. 5/19/08 at 7. The new attorney, Volpe, reported that he would file an appearance in the case only if the court would continue the case to allow him adequate time to prepare for trial. Finally, Oppenheimer informed the court that Sellers had fired him on Friday and hired Volpe in his stead. The district court judge denied the informal motion to continue, explaining that he had already attempted to accommodate counsel by hearing an untimely motion to suppress, by pushing back the trial date from May 12 to May 19, and by

cancelling his attendance at a Seventh Circuit conference. The court noted further that Sellers's repeated promises that Wiener would file an appearance never came to fruition. The district court then instructed Sellers that he was free to fire Oppenheimer (who, it is worth repeating, Sellers had never hired in the first place), but that if another attorney did not enter his appearance that day, Sellers would have to proceed to trial pro se. Sellers ultimately agreed "under protest," as he put it, to continue with Oppenheimer as his counsel. R. 74, Tr. 5/19/08 at 8,13. Following a three day jury trial, Sellers was convicted on all counts. He was later sentenced to a term of imprisonment of 180 months. After unsuccessful post-trial motions, Sellers filed this appeal.

In this court, Sellers argues that the district court's refusal to grant him a continuance deprived him of his Sixth Amendment right to choice of counsel. We agree that Sellers was deprived of his Sixth Amendment right and that he is therefore entitled to a new trial.

## II.

The Sixth Amendment grants a defendant the right to assistance of counsel. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). This includes the right, when the defendant has the means to retain his own attorney, to be represented by counsel of choice. *Id.* Consequently, a court cannot arbitrarily or unreasonably deny a defendant the

right to retain chosen counsel. *Carlson v. Jess*, 526 F.3d 1018, 1024 (7th Cir. 2008). The right is separate from the generalized due process right to a fair trial, and thus the deprivation of the right is complete when the defendant is erroneously denied counsel of choice. *Gonzalez-Lopez*, 548 U.S. at 148. Such a denial constitutes structural error and justifies reversal without inquiry into prejudice. *Id.* at 150.

The right to counsel and the right to engage counsel of one's choosing, however, are not absolute. A court retains wide latitude to balance the right to choice of counsel against the needs of fairness to the litigants and against the demands of its calendar. *Gonzalez-Lopez*, 548 U.S. at 152; *United States v. Smith*, 618 F.3d 657, 666 (7th Cir. 2010); *United States v. Carrera*, 259 F.3d 818, 824-25 (7th Cir. 2001). This means, of course, that trial courts have broad discretion to grant or deny a request for a continuance to substitute new counsel. *Carlson*, 526 F.3d at 1025. "Only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay" violates the Sixth Amendment right. *Carrera*, 259 F. 3d at 825. In determining whether the decision was arbitrary, we consider both the circumstances of the ruling and the reasons given by the judge. *United States v. Santos*, 201 F. 3d 953, 958 (7th Cir. 2000).

In its May 7 order, the district court offered three primary explanations for its initial denial of a continuance. First, the motion was filed past the deadline for pre-trial

motions set by the magistrate judge and only days before trial. R. 30 at 1-2. Second, Sellers's preferred counsel had not yet filed an appearance and even if he had, the court would follow its own rule that if a defendant wishes to hire a new lawyer, that "new counsel take the case as they find it." R. 30 at 2. Third, Oppenheimer had repeatedly missed other deadlines in the matter.[2] *Id.*

After the court issued the order, Oppenheimer renewed his motion orally before the court during pre-trial hearings. In sticking with his original denial, the district court, from the bench, offered several additional explanations for denying the continuance. These included the fact that the court had already accommodated the defendant by moving the case back one week, the government had timely turned over discovery, the case was not complex, the judge had cancelled his attendance at the Seventh Circuit judicial conference, the delay of the trial would affect other cases in need of trial dates, and that he was responding to the propensity of other Illinois counsel to request last minute continuances.

---

[2] Interestingly, the court denied the motion for a continuance to substitute new counsel in part because of the failings of counsel. Under this reasoning, a defendant whose lawyer fails to comply with the court's deadlines will be saddled with his ineffective counsel precisely because the lawyer is ineffective.

To determine whether the decision was arbitrary, we consider the reasons for denial articulated by the district court judge. *See Santos*, 201 F.3d at 958. We begin with the court's repeated statement — reiterated four times — that the continuance would be denied, in part, because "it is typically this Court's rule that new counsel take the case as they find it." R. 30 at 2. *See also* R. 74, Tr. 5/19/08 at 5; R. 36, Tr. 5/16/08 at 4, 26. This is not, however, the rule in this Circuit. Quite the opposite. The Sixth Amendment demands that a district court may not arbitrarily and unreasonably deny a continuance to provide for choice of counsel. *Carlson*, 526 F.3d at 1024. Adhering to a rigid rule that "a lawyer must take the case as he finds it" is exactly the type of arbitrary rule that the Sixth Amendment prohibits. *See Id.* at 1026. Thus a myopic insistence on proceeding with a scheduled trial date in the face of a valid request for a continuance is arbitrary and unreasonable. *United States v. Miller*, 327 F.3d 598, 601 (7th Cir. 2003).

But what of the district court's other explanations for the denial? The district court seemed particularly concerned about the "eleventh-hour" filing for a continuance and the related fact that Sellers's attorney had missed the deadlines for other pre-trial filings. *See* R. 30 at 1 (criticizing the 11th hour motion); R. 36, Tr. 5/9/08 at 15-16, 20 (same); R. 36, Tr. 5/16/08 at 18 (same); R. 74, Tr. 5/19/08 at 12 (same); R. 30 at 2-3 (criticizing counsel for ignoring other pretrial filing deadlines); R. 36, Tr. 5/9/08 at 31, 34 (same); R. 74, Tr. 5/19/08

at 10 (same). A district court, after all, has a legitimate
interest in ensuring that parties abide by scheduling orders
to ensure prompt, orderly, and fair litigation. *Campania
Mgmt. Co., Inc. v. Rooks, Pitts & Poust*, 290 F.3d 843, 851 (7th
Cir. 2002). Even where Sixth Amendment rights are at stake,
a district court legitimately can balance the right to counsel
of choice against the demands of its calendar and make
scheduling and other decisions that effectively exclude
chosen counsel. *Gonzalez-Lopez*, 548 U.S. at 152. The key,
however, is whether the court has indeed balanced those
interests, or instead has acted arbitrarily.

It is through this lens that we view the district court's
explanation that the defendant's motion for a continuance
came too late. Oppenheimer filed the first motion for a
continuance on May 7, 2008, five days (three business days)
before the originally scheduled May 12 trial date. This fact,
the government says, distinguishes Sellers's case from one
upon which the defendant heavily relies – *Carlson*, 526 F.3d
at 1018. In *Carlson*, this Circuit found that the court had
denied a defendant his Sixth Amendment right to counsel of
choice when he requested new counsel four days prior to
trial. "Most notably, in *Carlson*," the government says, "the
defendant filed his motion one week before trial . . . . In
contrast, Sellers failed to file his first written motion for [a]
continuance until three business days before trial was
scheduled to begin." (Government brief at 22-23). This
juxtaposition is confounding. In fact, both Carlson and

Sellers filed their motions at approximately the same point in litigation  — in Carlson's case, on August 23, just four days (and two business days) before the scheduled August 27 trial. *Carlson*, 526 F.3d at 1020. Sellers, on the other hand, filed his motion five days (three business days) prior to trial. In reviewing the *Carlson* case, this court found that the timing of Carlson's motion was understandable as he had filed his motion to substitute immediately after he retained new counsel, he had never requested substitute counsel previously, he had no history of gaming the system, and the time since arraignment was "relatively short."  *Carlson*, 526 F.3d at 1026.  The court also noted that the case was relatively simple and would not require a lengthy trial nor many witnesses.  The same can be said for Sellers on all counts (in fact, the time from Sellers's arraignment to the scheduled trial date was only sixty days – shorter by more than a third than Carlson's ninety-nine days). *See also Santos*, 201 F.3d at 958-59 (two and a half months from indictment to trial was not, among other reasons, a reason to deny a continuance).  Like Sellers, Carlson informed the court that communication between his lawyer and himself had completely broken down and that they could not agree on an approach to the defense. *Carlson*, 526 F.3d at 1027.  If there is any difference at all, it is that Carlson remained in custody while his case was pending whereas Sellers was released on bond.  Although this may have given Sellers incentive to delay his trial, there is no evidence in the record that his request to delay the trial in order to accommodate

the appearance of his counsel of choice was filed in an attempt to postpone incarceration. To the contrary, this was the first and only motion for a continuance that Sellers filed prior to trial, and there was an abundance of evidence that, from day one, Sellers had been represented by a lawyer he never chose.

We look, however, not just at how close to trial the request came, or how long it has been since the arraignment, but rather, as the court did in *Carlson*, we look at the whole of the circumstances surrounding the last minute filing. *See also Smith*, 618 F.3d at 666 (looking at the court's comments, taken as a whole); *Santos*, 201 F.3d at 958 ("the appellate court must consider both the circumstances of the ruling and the reasons given by the judge for it"). At arraignment, the magistrate judge ordered all pretrial motions to be filed within thirty days of the March 13, 2008 arraignment (i.e. on April 12, 2008), and set a trial date for May 12, 2008. As of the pre-trial conference on May 2, 2008, Oppenheimer had not filed any pre-trial motions on Sellers's behalf. On that date, Oppenheimer informed the magistrate judge that he was not counsel of choice and that he would file a motion for a continuance to give Sellers's chosen counsel the opportunity to file an appearance and prepare for trial. In light of that information, the magistrate judge extended the deadlines for filing motions, contingent on the district court's grant of the continuance. Oppenheimer, apparently expecting Wiener to replace him at any moment, failed to

file the pre-trial motion to suppress by the original April 12 date. He also failed to file his proposed jury instructions, proposed voir dire, and joint statement of the case as originally required, errantly relying on the magistrate's judge's contingent extension.

There is no doubt that Oppenheimer was at fault for missing deadlines while waiting for Wiener to appear, and for incorrectly relying on the magistrate judge's contingent extension. But a court that sacrifices a Sixth Amendment right without viewing the circumstances of the case as a whole acts arbitrarily. When viewed through the lens of the case as a whole, we see that Oppenheimer assumed from the get-go that Wiener would be taking the helm. Wiener asked Oppenheimer only for his assistance as second chair. R. 36, Tr. 5/9/08 at 9-12. Although this does not justify Oppenheimer's failure to meet the court's deadlines, it does provide some evidence that Oppenheimer did not fail to prepare the case for trial and seek a continuance as a delay tactic or for other illegitimate reasons, but rather he delayed preparation in true anticipation that Wiener would step in as he apparently had promised. Oppenheimer appeared to be counting on Wiener's appearance until the bitter end. *See* R. 36, Tr. 5/9/08 at 11 ("It is my understanding, Judge, that Mr. Wiener's appearance has not yet been filed, although he plans on filing his appearance"); R. 36, Tr. 5/12/08 at 3 ("The Court: you were advised that he was going to enter an appearance today? Mr. Oppenheimer: That's correct, your

Honor."); *Id.* at 8 ("The Court: Mr. Wiener is still going to enter an appearance you thought today some time?  Mr. Oppenheimer: Yes.");  R. 36, Tr. 5/16/08 at 22 ("The Court: As late as this week did Mr. Wiener tell you he was going to appear.  Sellers:  Yes.").

Moreover, although it is true that the district court admonished Oppenheimer to prepare for trial, it issued that warning on the Friday prior to a Monday trial.  R. 36, Tr. 5/16/08 at 27.  The district court advised, "Mr. Oppenheimer, I suggest that you get ready for trial on Monday *until such time as you are terminated*, if you are terminated."  *Id.* (emphasis supplied).  In fact, Sellers contacted Oppenheimer later that very day to fire him.  R. 74, Tr. 5/19/08 at 8-9.  In short, it does not appear that Sellers was attempting to delay his trial or game the system.  *See Carlson*, 526 F.3d at 1026; *Santos*, 201 F.3d at 959.

The district court spoke generically of how continuances burden other litigants and the court's calendar. R. 36, Tr. 5/12/08 at 4; R. 74, Tr. 5/19/08 at 11.  But the fact that the district court failed to inquire of either Oppenheimer, or later Volpe, how long substitute counsel would need to prepare adequately for trial evidences a failure to actually balance the right to choice of counsel against the needs of fairness, and suggests that the district court unreasonably viewed any delay as unacceptable. *See United States v. Williams*, 576 F.3d 385, 390 (7th Cir. 2009)

("The failure to inquire how long the defense needs to prepare suggests that the district court unreasonably considered any delay unacceptable: That sort of rigidity can only be characterized as arbitrary."); *see also Carlson*, 526 F.3d at 1026. A district court's schedule, although a significant consideration, does not automatically trump all other interests. *Smith*, 618 F.3d at 666. As this court has noted, trial dates frequently open when cases settle and defendants plead. *Carlson*, 526 F.3d at 1026. Although the district court had a two-to-three week political corruption trial set to begin May 26 (i.e. a week after Sellers's trial began) (R. 36, Tr. 5/9/08 at 22-23), even the inconvenience of pushing a trial back a month or so can easily be outweighed by a defendant's interest in having counsel of choice. *See Carlson*, 526 F.3d at 1026.

The record provides no evidence that the court balanced any of these circumstances against the needs of fairness and the demands of its calendar. *See Gonzalez-Lopez*, 548 U.S. at 152. It seems instead that the court stood on unyielding principle — the principle that new counsel must "take the case as he finds it;" the principle that continuances will not be granted for those who request them at the eleventh-hour and miss other deadlines; and the principle that delay of one case will unfairly backlog other cases.

In addition to the more compelling "eleventh-hour" and court scheduling rationales articulated by the district

court, its opinion and oral rulings are riddled with indications of generalized annoyance with defendant's counsel that smack of an arbitrary application of the rule as retribution for both counsel's own errors, and the errors of others. Most strikingly, the district court confessed:

> I also ran into the problem where there were other cases with Illinois counsel, who just happened some were Illinois counsel, and they were counsel that were appearing at the 11th hour and asking for continuances because of new counsel. So if I got excited with you, that was one of the reasons you caught my wrath because of the dilemma that was being caused by that.

R. 36, Tr. 5/12/08 at 5. There can be no more arbitrary and unreasonable application of a rule than as punishment for the missteps of another lawyer in an unrelated case. There were plenty of other indications that the court was simply annoyed with Oppenheimer. The court appeared to disbelieve everything from Oppenheimer's claim of car trouble at one status hearing to his scheduled appearance on another out-of-state matter. *See*, *e.g.*, R. 30 at 2 ("Oppenheimer failed to appear at the first pretrial conference in front of Magistrate Rodovich, claiming car trouble"); R. 30 at 3, ("Oppenheimer now claims to be in New Mexico on a matter, but does not explain why this

takes precedence to a trial, or why he was not prepared.")[3] The district court judge even complained that he "canceled in part for this case my attendance at the Seventh Circuit Judicial Conference, which is being held in Chicago today," R. 74, Tr. 5/19/08 at 7, and finally, that he had already "spent a substantial amount of time getting ready for this case over the weekend and in the last few weeks."  *Id.* at 12; R. 36, Tr. 5/9/08 at 20.

We reiterate that a court certainly may consider how last minute continuances and missed deadlines tread upon the rights of parties and the demands of a court's calendar. The key, however, is that these legitimate considerations must be balanced against the reasons in support of the motion for a continuance to accommodate new counsel. *Carlson*, 526 F.3d at 1026-27.  Here, the court failed in its duty to look also at the other side of the scale and to weigh Sellers's rationale for terminating Oppenheimer.  The court ought to have considered the fact that Oppenheimer had never been Sellers's counsel of choice (R. 36, Tr. 5/16/09 at 23).  This was not a case where a defendant hired one counsel and then later changed his mind.  More importantly, communication between Sellers and Oppenheimer had completely deteriorated.  R. 74, Tr. 5/19/08 at 7 ("I don't want

---

[3] The district court judge later conceded that Oppenheimer had a "well founded" excuse for missing the status conference to attend a previously scheduled hearing in New Mexico.  R. 36, Tr. 5/9/08 at 13.

Mr. Oppenheimer to represent me. We have too many differences on the case. We don't see eye to eye. We don't get along."). Furthermore, the court must have known that Oppenheimer was unprepared for trial. The court had informed Oppenheimer that he should prepare for trial until such time as he was terminated. R. 36, Tr. 5/16/08 at 27. But Oppenheimer made clear to the court that he was informed on the Friday before the Monday trial that he had been fired. R. 74, Tr. 5/19/08 at 8-9. In fact Oppenheimer was apparently so certain that he was terminated that he had made arrangements to appear in another courthouse in another matter on the date set for Sellers's trial, and had to call his office from Judge Lozano's courtroom to arrange for another lawyer to appear. R. 74, Tr. 5/19/08 at 17.[4]

The district court also had the duty to consider that Sellers's new counsel and counsel of choice, Volpe, informed the court that "I would be doing a great, great disservice to Mr. Sellers if I attempted to try this case this week." R. 74, Tr. 5/19/08 at 12. Furthermore, Sellers made it clear that he was not prepared to proceed pro se. "Well, Your Honor, I can't represent myself." *Id.* at 7. Thus the court knew that Sellers was left with three choices: First, he could opt for a lawyer, not of his choosing, who, although somewhat

---

[4] It was clear that he was not prepared to give an opening statement that day, as it was less than one page of transcript (250 words) and failed to present any coherent theory of the case. R. 74, Tr. 5/19/08 at 177-78.

familiar with the case, was unprepared for trial, and with whom he could not get along or agree. Second, he could pick a lawyer of his choice who was completely unfamiliar with his case and wholly unprepared for trial; or third, he could represent himself, again without any time to prepare for trial or study the law. Sellers's reasons for needing a continuance were facially valid, yet the district court failed to explore them or balance them against the legitimate reasons for denying the motion for a continuance. *See Carlson*, 526 F. 3d at 1026-27.

The government argues that Sellers's case is similar to *United States v. Carrera*, where this court upheld the trial court's denial of a continuance for substitution of counsel made in the days just prior to trial. *Id.* 259 F.3d 818 (7th Cir. 2001). The government ignores the fact that, because Carrera's proposed new attorney never actually appeared to move for a continuance, the district court could not engage in the exact type of balancing that is essential before deciding whether a continuance is warranted. *Id.* at 825 For this reason, Carrera's lawyer's motion to withdraw as counsel was denied.[5] *Carrera*, 259 F.3d at 825 ("because his attorney never moved for a continuance, we do not know if

[5] Carrera's attorneys filed an emergency motion to withdraw noting that Carrera had terminated their representation. Carrera's new counsel, however, did not appear and never filed a motion to continue or for substitution of counsel. *Carrera*, 259 F.3d at 822-23.

the government would have opposed the motion, if the judge had a scheduling conflict, or if a continuance would have caused hardship to any of the parties.")

Under *Gonzalez-Lopez*, this constitutional violation constitutes a structural error not subject to review for harmlessness. *Id.*, 548 U.S. at 148-49, 152. It is impossible to know what different choices, if any, Wiener or Volpe would have made in how they approached the pre-trial motions, how they defended Sellers at trial, and what impact those differences might have had on the outcome of the proceedings. *Id.* at 150. The error affected the framework of the trial and pre-trial proceedings and denied Sellers his Sixth Amendment right to choice of counsel.

As a final matter, on May 9, 2011, Sellers moved this court for a temporary release on bond pending appeal. That motion to this court is now moot, but in light of the exigent situation regarding Sellers's mother and her declining health, the district court shall construe that motion as one made to it and shall decide the motion with all due haste.

The judgment and sentence below are VACATED, and this case is REMANDED for a new trial, including all pre-trial proceedings. The mandate shall issue immediately.