In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-2604

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

RODERICK D. SINCLAIR,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:11-CR-00105(01)RM — **Robert L. Miller, Jr.**, *Judge*.

ARGUED APRIL 8, 2013 — DECIDED OCTOBER 21, 2014

Before BAUER, EASTERBROOK, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. Roderick Sinclair was arrested in Elkhart, Indiana, for driving with a suspended license. The police found a loaded handgun, a distribution quantity of marijuana, and tools of the drug-trafficking trade in his car. Sinclair was indicted for possessing marijuana with intent to distribute, *see* 21 U.S.C. § 841(a)(1), possessing a firearm in furtherance of a drug-trafficking crime, *see* 18 U.S.C. § 924(c), and possessing a firearm as a felon, *see id.* § 922(g)(1).

Trial was set to begin on a Tuesday. On Wednesday of the week before trial, Sinclair wrote the district judge asking for a

continuance to allow his family to hire a private attorney to represent him. The judge received the letter on Thursday, docketed it on Friday, and scheduled a hearing for the following Monday. At the end of the hearing, the judge denied the continuance request. Trial began as scheduled the next day, and the jury convicted Sinclair on all counts.

Sinclair's presentence report recommended grouping the drug count with the felon-in-possession count under § 3D1.2 of the sentencing guidelines, which directs the court to combine "[a]ll counts involving substantially the same harm" into a single group and determine the offense level for the group. U.S.S.G. § 3D1.2. Grouping is required in several situations, one of which is when a count of conviction "embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guidelines applicable to another of the counts." *Id.* § 3D1.2(c).

The government objected to the grouping recommendation, noting that although the two counts ordinarily would be treated as specific offense characteristics of each other, they did not have that effect in this case because Sinclair was also convicted of a § 924(c) offense. The statutory penalty for a § 924(c) conviction is a mandatory 60-month consecutive sentence, and with that conviction in the mix, the guidelines direct the court *not* to apply any offense-characteristic enhancement for firearm possession to the underlying count. *See* U.S.S.G. § 2K2.4 cmt. n.4. In other words, this particular combination of counts removed the otherwise applicable basis for grouping under § 3D1.2(c).

The judge adopted the government's interpretation of the grouping rule. Absent grouping, the offense level was 17 instead of 16, resulting in a slightly higher guidelines range for the two counts. The judge imposed concurrent within-guidelines prison terms of 57 months on the drug and felon-in-possession counts and tacked on the mandatory consecutive

60-month term for the § 924(c) conviction, for a total sentence of 117 months in prison.

Sinclair appealed, raising two issues. First, he argues that the district court violated his Sixth Amendment right to counsel of his choice by denying a continuance to allow his family to hire a private attorney. Second, he challenges the court's decision not to group the drug and felon-in-possession counts.

We affirm. The Sixth Amendment entitles a criminal defendant to retain counsel of his choice, *see United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006), but the trial court has broad discretion in addressing a continuance motion based on the right. The court is entitled to weigh the defendant's claim against the need to ensure the fair and efficient administration of justice. The judge did that here, and we find no abuse of discretion in his decision to deny the requested continuance.

We also find no error in Sinclair's sentence. In the ordinary case, the drug and felon-in-possession counts are treated as specific offense characteristics of each other, *see* U.S.S.G. §§ 2D1.1(b)(1), 2K2.1(b)(6)(B), triggering offense-level enhancements and thus the grouping rule of § 3D1.2(c). But the guidelines specifically provide that enhancements for firearm possession do not apply when the defendant is also convicted of violating § 924(c), which carries a mandatory consecutive sentence. *See id.* § 2K2.4 cmt. n.4. Because the otherwise applicable offense-characteristic enhancements were not applied here, there was no basis for grouping under § 3D1.2(c).

## I. Background

Elkhart Police Officer Michael Bogart had some history with Sinclair, or at least enough to know that he did not have a valid driver's license. On the afternoon of June 16, 2011,

Bogart spotted Sinclair driving a blue Cadillac westbound on Blaine Avenue in Elkhart. After confirming that Sinclair's license was indeed suspended, the officer followed the Cadillac and pulled up behind the car as Sinclair parked on Roys Avenue.

Officer Bogart approached and arrested Sinclair for driving with a suspended license. A frisk turned up a plastic bag containing marijuana in Sinclair's front pants pocket. A search of the car revealed numerous bags of marijuana, a supply of small plastic bags, two digital scales, and a loaded handgun. At the Elkhart police station, Sinclair admitted that the marijuana was his and that he planned to sell it. He also admitted that the handgun was his.

A federal grand jury indicted Sinclair for possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1), possession of a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c), and possession of a firearm as a felon in violation of 18 U.S.C. § 922(g)(1). A federal defender was appointed and the case was set for trial.

About a month before trial, Sinclair filed two motions, one to continue the trial and one to suppress evidence. The continuance motion was based on nascent plea negotiations and also raised conflicts in the trial schedules of the attorneys. The district court granted the continuance request and rescheduled the trial to February 7, 2012. On January 6, 2012, the court held a hearing on the suppression motion and denied it. Sinclair's trial remained scheduled for February 7, a month later.

On February 2—the Thursday before trial—the judge received a letter from Sinclair seeking another continuance. The letter, dated February 1, explained that some of Sinclair's family members planned to hire private counsel to represent

him using their tax-refund money to pay the attorney's retainer. Sinclair told the court that his family members expected to receive their refunds within seven to ten business days; he asked for a continuance of no more than 21 days. Sinclair also expressed dissatisfaction with his federal defender, complaining that the lawyer had not followed through with an important line of questioning at the suppression hearing. Finally, Sinclair claimed to have new evidence relevant to suppression. He didn't say what it was, but he assured the court that his new lawyer would present it once he was retained.

The judge docketed the letter on Friday, February 3, and scheduled a hearing for February 6, the following Monday. At the hearing the judge attempted to clarify Sinclair's reasons for the continuance request, asking Sinclair whether his family members had contacted a private attorney yet. Sinclair said yes, his family had contacted Attorney Mark Lenyo, who had quoted a retainer amount. Sinclair reiterated that his family members planned to use their tax-refund money to pay the retainer and expressed confidence that they would soon have their refunds in hand.

The judge then asked Sinclair why he thought his current federal defender was not representing him properly. Sinclair responded that the lawyer had confused him about the effects of pleading guilty and had not handled the suppression hearing well. But he wasn't specific about what he thought counsel had omitted, saying only that the suppression hearing was "the straw that broke the camel's back." Finally, the judge asked Sinclair about his claim of newly discovered evidence. Sinclair said only that new evidence had come to his attention two weeks earlier and his new attorney would present it when he was hired. Again, Sinclair was not more specific, and even now he does not tell us what the new evidence is.

The judge ruled from the bench and denied the continuance motion. He began by noting the last-minute timing, saying that the situation might have been different if Sinclair had filed the motion sooner, even just two or three weeks earlier. The judge also questioned whether Lenyo would be available and willing to take on Sinclair's case. Even assuming that Sinclair's family had been in touch with him, the inquiry was preliminary and establishing an actual attorney-client relationship depended on many contingencies. This uncertainty, the judge stated, weighed heavily against a continuance. The judge also considered the disruption a continuance would cause to others involved in the case. He noted that the courtroom was reserved for a jury trial, 34 jurors had been summoned, and the government had subpoenaed five witnesses and instructed a sixth to appear. Finally, the judge addressed Sinclair's claim of dissatisfaction with his federal defender. The complaints about counsel's performance were vague, the judge said, and the federal defender had to date provided effective assistance. The judge credited Sinclair with having filed the motion in good faith and not for the purpose of delay, but in the end declined to postpone the trial, finding that Sinclair's reasons for wanting a continuance were vague, weak, and contingent, and in any event were substantially outweighed by countervailing administrative considerations and inconvenience to others.

The case proceeded to trial as scheduled the next day. Before jury selection Sinclair renewed his request for a continuance so he could hire Lenyo. He told the judge that his family members had received their anticipated tax refunds the day before and had attempted to contact Lenyo, but the attorney was out of the office. The judge recalled that Lenyo was in trial in a different court, which would explain why Sinclair's family could not reach him. The judge again asked Sinclair about his problems with his federal defender. Sinclair reiterated the two

reasons he had given the day before and added that his attorney seemed unprepared when meeting with him.

Once more the judge denied Sinclair's request for a continuance. He expressed skepticism that Lenyo, even if hired, could get up to speed on the case within an appropriate time frame. The judge also reiterated that there was no reason to doubt the performance of Sinclair's federal defender. The judge said again that he did not think Sinclair was simply trying to delay, but concluded that the uncertainty and inconvenience surrounding the eleventh-hour continuance request (twelfth-hour, really) were good reasons to deny it.

The trial ended the same day it began; the jury returned a verdict of guilty on all three counts. The case proceeded to sentencing. Sinclair's presentence report recommended grouping counts 1 and 3—the marijuana and felon-in-possession counts—as directed by § 3D1.2 of the sentencing guidelines, which provides that "[a]ll counts involving substantially the same harm shall be grouped together" and a single offense level determined for the group. U.S.S.G. § 3D1.2. The grouping guideline lists several circumstances in which multiple counts are deemed to involve "substantially the same harm," including, as relevant here, "[w]hen one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts." *Id.* § 3D1.2(c). Grouping produced a total offense level of 16 for the grouped counts 1 and 3. This offense level, combined with Sinclair's criminal history category of VI, yielded an advisory guidelines range of 46 to 57 months for these counts. Count 2—the conviction for possessing a firearm in furtherance of a drug-trafficking crime—carried a mandatory consecutive 60-month sentence. *See* § 924(c); U.S.S.G. § 2K2.4(b).

The government objected to the grouping recommendation. The judge agreed and declined to group counts 1 and 3. The

judge acknowledged that in most cases the two counts should be grouped because the convictions are specific offense characteristics of each other, resulting in offense-level enhancements under § 2D.1(b)(1) and § 2K2.1(b)(6)(B). But the guidelines instruct courts not to apply offense-characteristic enhancements for firearm possession when the defendant is also subject to a mandatory consecutive sentence for possessing a firearm in furtherance of a drug-trafficking crime in violation of § 924(c). *See* U.S.S.G. § 2K2.4(b) & cmt. 4. The judge thus moved on to decide whether grouping was warranted when an offense-characteristic enhancement does not actually apply, even though it normally would.

The judge concluded that grouping was not warranted for two basic reasons. First, he noted that grouping under § 3D1.2 is justified only when the counts are closely related, and concluded that the drug-trafficking and felon-in-possession counts were not closely related because they involved distinct harms to society. Second, he observed that the grouping guideline was designed to prevent double counting, and there was no risk of double counting here since the otherwise applicable offense-characteristic enhancements did not apply. Without grouping, the offense level for these two counts was 17 instead of 16, yielding a guidelines range of 51 to 63 months. After weighing the sentencing factors under 18 U.S.C. § 3553(a), the judge imposed a total sentence of 117 months— 57 months concurrent on counts 1 and 3 and a consecutive 60 months on count 2.

## II. Discussion

Sinclair raises two issues on appeal. First, he challenges the denial of his continuance motion, claiming a violation of his Sixth Amendment right to counsel of his choice. Second, he

challenges the district court's decision not to group the drug-trafficking and felon-in-possession counts under § 3D1.2(c).

## A. Continuance/Right to Counsel of Choice

Although a criminal defendant has a right to a court-appointed attorney if he cannot afford to hire one, *see Gideon v. Wainwright*, 372 U.S. 335, 344–45 (1963), he does not have the right to choose his appointed counsel, *see Gonzalez-Lopez*, 548 U.S. at 151; *Wheat v. United States*, 486 U.S. 153, 159 (1988); *Carlson v. Jess*, 526 F.3d 1018, 1025 (7th Cir. 2008). But if a defendant has the means to hire his own attorney, the Sixth Amendment generally protects his right to the assistance of counsel of his choice. *Gonzalez-Lopez*, 548 U.S. at 144. The right is qualified, however, *id.* at 151–52; *United States v. O'Malley*, 786 F.2d 786, 789 (7th Cir. 1986), and in some circumstances must yield to the "need for a fair and efficient administration of justice," *United States ex rel. Kleba v. McGinnis*, 796 F.2d 947, 952 (7th Cir. 1986) (quoting *United States v. Cicale*, 691 F.2d 95, 106 (2d Cir. 1982)).

When faced with a defendant's request to adjourn a trial to permit the retention of counsel, the trial court should begin with "a presumption in favor of a defendant's counsel of choice." *Carlson*, 526 F.3d at 1024. After all, the right is "one of constitutional dignity." *United States v. Santos*, 201 F.3d 953, 959 (7th Cir. 2000). But the court has "wide latitude in balancing the right to counsel of choice against the needs of fairness and … the demands of its calendar." *Gonzalez-Lopez*, 548 U.S. at 152 (citation omitted); *see also United States v. Sellers*, 645 F.3d 830, 834 (7th Cir. 2011). Accordingly, trial judges have broad discretion over continuance requests premised on the Sixth Amendment right to counsel of choice:

> Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their

> problems is that of assembling the witnesses,
> lawyers, and jurors at the same place at the same
> time, and this burden counsels against continu-
> ances except for compelling reasons. Conse-
> quently, broad discretion must be granted trial
> courts on matters of continuances; only an un-
> reasoning and arbitrary "insistence upon expedi-
> tiousness in the face of a justifiable request for
> delay" violates the right to the assistance of
> counsel [of choice].

*Morris v. Slappy*, 461 U.S. 1, 11 (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)).

"Discretion," of course, "is not whim," *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005), and a trial judge confronted with a continuance request cannot indulge "a myopic insistence upon expeditiousness," *Ungar*, 376 U.S. at 589; *see also Carlson*, 526 F.3d at 1025. Our review is deferential; we do not second-guess the balance struck by the trial judge. Only an "unreason[ed] and arbitrary" denial of a continuance violates the defendant's Sixth Amendment right to counsel of his choice. *Morris*, 461 U.S. at 11–12; *Ungar*, 376 U.S. at 589; *Sellers*, 645 F.3d at 834–35; *Carlson*, 526 F.3d at 1025; *Santos*, 201 F.3d at 958.

One particularly salient circumstance here involves the timing of Sinclair's continuance motion. The judge expressed serious concern about the last-minute nature of the request, and rightly so. As a case gets closer to trial, granting a continuance becomes more disruptive to the court's calendar and to others involved in the case. On the eve of trial, as compared to earlier in the litigation, the interests of the government, the witnesses, the jurors, and the court will be particularly strong. *See United States v. Gaya*, 647 F.3d 634, 636 (7th Cir. 2011). Needless to say, trial preparation takes substantial time and effort—by the prosecutor and defense attorney, to be sure, but

also by the court—and revving up for trial a second time necessarily involves duplication of effort and attendant public expense. Other parties—primarily the witnesses and jurors, but court personnel as well—will have made preparations and arranged their schedules in expectation of trial. Finally, last-minute continuances cause more serious disruption to court calendars; it's too late for the court to slot in another trial, and the interests of litigants in other cases may be adversely affected. In short, late-breaking continuances can be especially costly. On the eve of trial, the interests weighing against granting a continuance take on greater significance. For all practical purposes, Sinclair's request came on the eve of trial.

That isn't to say that the last-minute nature of Sinclair's request alone justified denying it. Our precedent does not support such a hard-and-fast rule. We have found a violation of the defendant's right to retain counsel of his choice in cases involving continuance requests made a just a few days before trial. *See Sellers*, 645 F.3d at 833 (continuance motion filed three business days before trial); *Carlson*, 526 F.3d at 1020 (continuance motion filed two days before trial). In both *Sellers* and *Carlson*, the trial judges cited general calendar disruption as the reason to deny eve-of-trial continuance requests. In each case we held that rote reliance on this factor was insufficient, without more, to outweigh the defendant's right to retain counsel of his choice. *See Sellers*, 645 F.3d at 837; *Carlson*, 526 F.3d at 1021–22. As we explained in *Sellers*, "[a] district court's schedule, although a significant consideration, does not automatically trump all other interests." 645 F.3d at 838; *see also Carlson*, 526 F.3d at 1027 ("In sum, the trial judge ignored the presumption in favor of [the defendant's] counsel of choice and insisted upon expeditiousness for its own sake.").

Here, in contrast, the district judge did not deny the continuance motion based on generic concerns about its last-minute timing. Rather, the judge weighed the costs of a

continuance to specific third parties involved in the case: Thirty-four jurors had been called to report for jury duty; five witnesses were under subpoena; and an additional witness had been instructed to appear. Delaying the trial would inconvenience these 40 people. The witnesses would have to adjust their schedules again, and a new jury pool would have to be drawn. These are real costs for real people (not to mention the sunk public resources). By considering these interests, the judge did not arbitrarily stick to the schedule for its own sake.

In some cases accommodating the defendant's right to counsel of his choice may justify these costs, but the defendant bears some responsibility to act diligently to minimize or avoid them if possible. *See Gaya*, 647 F.3d at 636 (emphasizing that the defendant "had ample opportunity during the previous five months to express to the court his dissatisfaction with his lawyer and desire for a different one"). Although Sinclair did not act with a purpose to delay the trial (we defer to the trial judge's view on this point), neither did he offer any reason for waiting until the last minute to request a continuance. In his own words, his counsel's performance at the suppression hearing on January 6 was "the straw that broke the camel's back," yet he let more than three weeks pass before requesting a continuance, and to this day he hasn't explained the delay. The judge pointed out that the result may well have been different if Sinclair had filed his motion two or three weeks earlier. The unexplained delay also supports the decision to deny the request for a continuance.

The clincher here, however, is the uncertainty surrounding Sinclair's attempt to retain private counsel. His family's plan to hire Lenyo was at best preliminary and highly contingent. Indeed, the judge likened a continuance in this situation to "betting on the future as to what's going to happen." That was an apt description. Sinclair's family had talked to Lenyo about representing him and learned the amount of Lenyo's retainer,

but it remained unclear whether Lenyo would take on the representation. He had not returned phone calls and was likely in trial elsewhere. Even now we don't know whether Lenyo was willing to represent Sinclair; there's nothing in the record suggesting that he ever agreed to undertake the representation. Although Sinclair said he would like to hire another attorney if he could not secure Lenyo's services, whether he could or would was pure conjecture.

This uncertainty meant that the costs to the government, the witnesses, and the fair and efficient administration of justice outweighed Sinclair's claim of a Sixth Amendment entitlement to a continuance. In our prior cases, this element of uncertainty was not present; the defendant had already retained private counsel. *See Sellers*, 645 F.3d at 832–34; *United States v. Smith*, 618 F.3d 657, 659 (7th Cir. 2010); *Carlson*, 526 F.3d at 1020–21; *Santos*, 201 F.3d at 957–58. We've suggested before that the preferred lawyer's failure to appear in support of a defendant's continuance motion is a significant factor weighing against granting a continuance. *See United States v. Carrera*, 259 F.3d 818, 825 (7th Cir. 2001) ("[B]ecause his attorney never moved for a continuance, we do not know if the government would have opposed the motion, if the judge had a scheduling conflict, or if a continuance would have caused hardship to any of the parties."); *see also Sellers*, 645 F.3d at 839 (suggesting that in *Carrera* there was no violation of the right to counsel of choice "because [the defendant's] proposed new attorney never actually appeared to move for a continuance," which meant that "the district court could not engage in the exact type of balancing that is essential before deciding whether a continuance is warranted").

Sinclair argues that the district court inappropriately focused on the federal defender's effective representation. But the judge was simply responding to Sinclair's complaint that a continuance was necessary because his federal defender had

performed poorly at the suppression hearing. Indeed, we have criticized trial courts for failing to consider the defendant's reasons for wanting a new lawyer. *See Sellers*, 645 F.3d at 838–39 ("The key, however, is that these legitimate considerations must be balanced against the reasons in support of the motion for a continuance to accommodate new counsel. Here, the court failed in its duty to look also at the other side of the scale and to weigh Sellers's rationale for terminating [his lawyer]." (citation omitted)); *Carlson*, 526 F.3d at 1027 ("[T]he trial court needed to explore [Carlson's reasons for wanting a new lawyer] and, because Carlson also requested a continuance, balance them against the reasons for not granting Carlson's motion. The trial judge, however, made no effort to do so."). The judge can hardly be faulted for probing Sinclair's dissatisfaction with his appointed lawyer. As it turned out, Sinclair was cagey on this subject and still has not specifically identified what he thinks his counsel omitted at the suppression hearing. Under the circumstances, the judge was well within his discretion to place little weight on this factor.

In short, the denial of the continuance motion did not violate Sinclair's Sixth Amendment right to retain counsel of his choice. The decision was neither unreasoned nor arbitrary. To the contrary, the judge appropriately weighed the uncertainties of Sinclair's plan to hire private counsel against the costs of a last-minute adjournment to the government, the witnesses, and the fair and efficient administration of justice. We find no abuse of discretion.

## B. Sentencing

Sinclair also challenges the district court's decision not to group counts 1 and 3, the convictions for marijuana trafficking and possession of a firearm as a felon. Grouping rules apply in multiple-count cases and are designed "to provide incremental

punishment for significant additional criminal conduct" and "to prevent multiple punishment for substantially identical offense conduct." U.S.S.G. ch. 3, pt. D, introductory cmt.; *see also United States v. Vucko*, 473 F.3d 773, 776–77 (7th Cir. 2007) (explaining that the purpose of the grouping guideline is to prevent "double counting"). "The rules achieve these goals by consolidating related offenses into groups and assigning a combined offense level based on the components of each group, the number of groups, and the relative offense levels assigned to each group." *United States v. Chase*, 296 F.3d 247, 250 (4th Cir. 2002).

The grouping guideline begins with a general rule—"[a]ll counts involving substantially the same harm shall be grouped together in a single Group"—and continues with a list of circumstances in which counts are deemed to involve "substantially the same harm" within the meaning of the rule. U.S.S.G. § 3D1.2. Relevant here is § 3D1.2(c), which states that multiple counts involve substantially the same harm "[w]hen one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts." *Id.* § 3D1.2(c).

Sinclair argues that the district court was required to group counts 1 and 3 because the conduct embodied in each of these counts is treated as a specific offense characteristic for the other. More specifically, the guideline for drug-trafficking offenses directs the court to apply a two-level enhancement for the offense characteristic of possessing a dangerous weapon during the commission of the offense. *See id.* § 2D1.1(b)(1). And the guideline for unlawful possession of a firearm directs the court to apply a four-level enhancement if the defendant possessed a firearm "in connection with another felony offense." *Id.* § 2K2.1(b)(6)(B). Because the drug-trafficking and felon-in-possession counts are specific offense characteristics

of each other, § 3D1.2(c) directs the court to combine them in a single group and determine the offense level for the group.

Ordinarily that's the correct analysis. But it's not correct in this case. Or more precisely, the usual analysis is incomplete in the specific circumstances of this case. Grouping rules are applied after the offense level has been calculated for each separate offense in the case. *United States v. Mrazek*, 998 F.2d 453, 455 (7th Cir. 1993) ( "[G]rouping comes after the offense level has been determined for each separate crime … ."). The order of battle in guidelines sentencing requires the court to first determine the base offense level and then add "any appropriate specific offense characteristics, cross references, and special instructions" in Chapter Two of the Guidelines Manual and any appropriate adjustments "related to victim, role, and obstruction of justice from Parts A, B, and C of Chapter Three." U.S.S.G. § 1B1.1(a)(2) & (3). In other words, the grouping rules in Part D of Chapter Three are not applied in the abstract; they come into play *after* the offense level for each count in the case has been determined.

The district court followed that order of analysis and determined that counts 1 and 3 are *not* treated as offense characteristics of each other with this particular combination of counts. To understand why requires an examination of the offense guideline for count 2, the § 924(c) conviction for possessing a firearm in furtherance of a drug-trafficking crime. The "guideline sentence" for a § 924(c) conviction is the minimum term of imprisonment required by statute. *See* U.S.S.G. § 2K2.4(b). Sinclair's § 924(c) conviction carried a statutory mandatory minimum sentence of 60 months. *See* § 924(c)(1)(A)(i). And the § 924(c) sentence must be consecutive to the sentence for the underlying offense, *see* § 924(c)(1)(D)(ii); a § 924(c) count cannot be grouped, *see* U.S.S.G. § 3D1.1(b)(1).

The § 924(c) conviction also affects the treatment of the other counts under Chapter Two of the guidelines. Because a

§ 924(c) conviction requires a mandatory consecutive sentence, Application Note 4 to § 2K2.4 specifically directs the court *not* to apply any offense-characteristic enhancement for firearm possession to the underlying count. *Id.* § 2K2.4 cmt. 4. ("If a sentence [for a § 924(c) conviction] is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for possession … of a[] … firearm when determining the sentence for the underlying offense."). This is because "[a] sentence [for a § 924(c) conviction] accounts for any … weapon enhancement for the underlying offense of conviction." *Id.*

Accordingly, by virtue of § 2K2.4, counts 1 and 3 did *not* operate as specific offense characteristics of each other, and the enhancements in §§ 2D1.1(b)(1) and 2K2.1(b)(6)(B) did not apply. With this particular combination of offenses, the otherwise applicable basis for grouping the drug-trafficking and felon-in-possession counts dropped out of the case.

The Eighth Circuit reached a contrary conclusion in *United States v. Bell*, 477 F.3d 607 (8th Cir. 2007). Confronting the same combination of counts that we address here, the court held that "[g]rouping of the felon in possession count and the drug count is proper even though the applicable [offense-characteristic] enhancements are not utilized." *Id.* at 615. The court acknowledged that Application Note 4 to § 2K2.4 directs the court not to treat the drug and felon-in-possession counts as specific offense characteristics of each other when a § 924(c) conviction is in the mix, but held "[n]onetheless" that "each count includes conduct that is 'treated as a specific offense characteristic in' the other offense, and therefore the counts should be grouped." *Id.* (quoting U.S.S.G. § 3D1.2(c)).

To reach this conclusion, the Eighth Circuit relied on the introductory comment to Part D of Chapter Three of the guidelines, which explains that the grouping rules implement a general policy of incremental punishment and seek to avoid

unwarranted increases in punishment for the same essential conduct: "Some offenses that may be charged in multiple-count indictments are so closely intertwined with other offenses that conviction for them ordinarily would not warrant increasing the guideline range." U.S.S.G. Ch. 3, pt. D, introductory cmt. Because the three counts in *Bell* were "closely intertwined" and arose from the same course of conduct, the Eighth Circuit concluded that the drug-trafficking and felon-in-possession counts should be grouped.[1] *Bell*, 477 F.3d at 616.

With respect, we disagree with the Eighth Circuit's interpretation of the guidelines in this situation.[2] The introductory comment to the grouping guideline doesn't alter the language of the relevant offense guidelines. Section 3D1.2(c) provides that grouping is required "[w]hen one of the counts embodies conduct that *is treated* as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts." U.S.S.G. § 3D1.2(c) (emphasis added). The guidelines governing the application of offense characteristics are found in Chapter Two of the Guidelines Manual. The relevant Chapter Two guideline directs the court *not* to apply offense-characteristic enhancements for firearm possession when a

---

[1] The Eighth Circuit does not apply *Bell* when the offenses are not "closely intertwined." *See United States v. Espinosa*, 539 F.3d 926, 930 (8th Cir. 2008) ("Here, the district court did not apply a specific offense characteristic for firearms possession when sentencing on Espinosa's drug count, and the record does not dictate a conclusion that the two offenses were closely intertwined as in *Bell*.").

[2] Because our decision creates a circuit split, we have circulated this opinion to all judges in active service. *See* 7TH CIR. R. 40(e). A majority voted not to hear this case en banc; Judges Posner and Williams voted to hear the case en banc. Judge Williams has filed a dissent from the decision not to hear the case en banc, which Judge Posner joins. Judge Flaum did not participate in the consideration of this Rule 40(e) circulation.

§ 924(c) conviction is in the sentencing mix. *See id.* § 2K2.4 cmt. n.4.

The application notes to § 3D1.2 bolster this understanding of how the grouping rule operates. Note 5 in particular sheds light on this issue:

> Sometimes there may be several counts, each of which could be treated as an aggravating factor to another more serious count, but the guideline for the more serious count provides an adjustment for only one occurrence of that factor. In such cases, only the count representing the most serious of those factors is to be grouped with the other count. For example, if in a robbery of a credit union on a military base the defendant is also convicted of assaulting two employees, one of whom is injured seriously, the assault with serious bodily injury would be grouped with the robbery count, while the remaining assault conviction would be treated separately.

*Id.* § 3D1.2 cmt. n.5. In this example, even though the less serious count could constitute a specific offense characteristic and normally would in isolation, it is not grouped with the other offenses because the offense-characteristic adjustment does not apply in the particular circumstances of the case. This confirms that grouping under § 3D1.2(c) depends on whether a specific offense characteristic *actually applies* in a given case, not whether it *could* apply as a general matter.

In the specific circumstances of Sinclair's case, the grouping rule of § 3D1.2(c) does not apply. Counts 1 and 3—the drug-trafficking and felon-in-possession counts—were not treated as offense characteristics of each other and did not trigger enhancements, even though they would be treated that way in the absence of the § 924(c) conviction. By its terms, § 3D1.2(c)

does not apply, so we do not need to address the district court's more general conclusion that counts 1 and 3 cause distinct harms and thus are not closely related. The court properly declined to group the two counts.

AFFIRMED.

WILLIAMS, *Circuit Judge*, with whom POSNER, *Circuit Judge*, joins, dissenting. This case should have been heard en banc. The sentencing issue presented in this case is one of great importance deserving the consideration of the entire court. Firearm and drug offenses are charged quite frequently together, so the panel's decision will affect the sentencing of many defendants. And that effect will mean a higher offense level which will often  lead to a longer sentence. On the merits, I agree with the Eighth Circuit's decision in *United States v. Bell*, 477 F.3d 607 (8th Cir. 2007), the previous interpretation of the grouping rules in this Circuit, and the current interpretation within other Circuits that have addressed the issue. That is, firearm and drug offenses are grouped, even when a § 924(c) count is also charged. Here, because counts 1 and 3 were not grouped, Sinclair's guidelines range increased from 46-57 months to 51-63 months.

The Guidelines instruct that counts *must* be grouped where "one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guidelines applicable to another of the counts." U.S.S.G. § 3D1.2(c). Section 3D1.2(c) does not require that the conduct embodied in one count actually be used to enhance the other count. It just requires that the count embody conduct that is treated as a specific offense characteristic of the other, which it does in this case. Count 3 embodies conduct that is treated as a specific offense characteristic of count 1, *see* § 2D1.1(b)(1), and count 1 embodies conduct that is treated as a specific offense characteristic of count 3, *see* § 2K2.1(b)(6)(B). So, these counts should be grouped based on the plain language of the Guidelines.

While it is true that comment 4 to § 2K2.4 instructs the court not to apply these reciprocal offense-characteristic enhancements, § 2K2.4 says nothing about whether the

counts should be grouped or not. Section 3D1.2 is the relevant provision addressing grouping and there is nothing in comment 4 to § 2K2.4 that makes § 3D1.2 inapplicable.

In addition to the plain language, the rationale behind grouping would particularly warrant its use in this situation. The Guidelines provide for grouping certain offenses to "'prevent multiple punishment for substantially identical offense conduct.'" *Bell*, 477 F.3d at 614 (quoting U.S.S.G. Ch. 3, pt. D, introductory cmt.). Convictions on multiple counts should not result in a sentence enhancement unless they represent additional conduct that is not otherwise accounted for by the guidelines. *Id.*; U.S.S.G. Ch. 3, pt. D, introductory cmt. Sinclair and Bell are convicted of three "'closely intertwined'" but separate offenses arising from the same conduct. *Bell*, 477 F.3d at 616 (quoting U.S.S.G. Ch. 3, pt. D, introductory cmt.). "While the three offenses have distinct elements, they do not 'represent additional conduct that is not otherwise accounted for by the guidelines.'" *Id.* (quoting U.S.S.G. Ch. 3, pt. D, introductory cmt.). If anything, the policy behind grouping applies with even more force to defendants like Sinclair and Bell, who are already being sentenced to a mandatory 60 months for the § 924(c) count.

Furthermore, disallowing grouping increases the significance of the formal charging decision, which is precisely one of the issues grouping was intended to address. *See* U.S.S.G. Ch. 3, pt. D., introductory cmt. If a defendant is being charged with drug trafficking and felon-in-possession offenses, then almost always the government can add a § 924(c) count for possessing a firearm in furtherance of a drug offense. Under the panel's decision, the defendant now faces a higher sentence for substantially the same conduct, not just once (for the § 924(c) count), but twice (with no grouping).

As the *Bell* court recognized, grouping of firearm and drug offenses happens with such regularity that it is often done without note. *Bell*, 477 F.3d at 615. Indeed, Sinclair's PSR recommended grouping. In *United States v. Gibbs*, 395 Fed. Appx. 248 (6th Cir. 2010) (unpublished) and *United States v. King*, 201 Fed. Appx. 715 (11th Cir. 2006) (unpublished), the Sixth and Eleventh Circuits acknowledged that drug trafficking and felon-in-possession offenses should be grouped even when a § 924(c) count is charged. Neither the government nor the panel's opinion points to any cases where a court disallowed grouping of these types of counts because a § 924(c) count was also charged. I see no reason for this change in sentencing practice.

In light of the now-circuit split on this issue, the United States Sentencing Commission should clarify its position on the role of comment 4 to § 2K2.4 in situations like this.

For these reasons, I dissent from the decision not to hear the case en banc.